145 So. 123

**LEON IRWIN & CO., Inc., v. BOARD OF COM'RS OF PORT OF NEW ORLEANS.**

No. 31937.

Nov. 28, 1932.

Rehearing Denied Jan. 3, 1933.

Harold A. Moise, of New Orleans, for appellant.

Lemle, Moreno & Lemle, of New Orleans, for appellee.

ODOM, J.

Plaintiff is a corporation engaged as an insurance agent and broker in the city of New Orleans. Defendant, hereinafter referred to as the dock board, is a corporation duly incorporated by an act of the Legislature, is a state agency, and has charge and supervision of wharves, docks, freight sheds, and all other appurtenances at the port of New Orleans.

In the early part of February, 1929, the dock board advertised in the public press for bids on contracts to insure its property against loss by fire to the extent of $10,000,-000, and at the same time sent out a printed form of proposals to the various insurance agents in New Orleans and elsewhere; its purpose being to get bids or proposals for the insurance required at the lowest rate possible. Plaintiff submitted its bid on $9,-000,000 of the insurance, fixing a specified rate for one year's insurance and another rate for three years; the rate for three years being two and one-half times the rate for one year. Its bid for the three years' insurance was accepted, and it procured the issuance of the required policies written by various and sundry insurance companies throughout the country satisfactory to the dock board, and delivered the policies to the board, which paid the premiums for three years, amounting to $174,629.07.

The policies remained in force for two years and two months, at the end of which

time the dock board exercised the option which it had under the terms stipulated in the policies of canceling them, and receiving back the unearned portion of the premiums amounting to $41,707.45. This amount was promptly paid by the insurance companies to the dock board.

The dock board was not obligated to pay, and did not pay, the plaintiff any fee or brokerage for obtaining the insurance, but plaintiff received its fee or compensation in the way of commissions paid by the various companies writing the insurance. The companies paid plaintiff's commissions based upon the total amount of premiums collected from the dock board, and accordingly, when the dock board canceled the policies and demanded the return of the unearned portion of the premiums, the insurance companies in turn charged back to plaintiff $9,250.93, being part of the commissions paid, which amount plaintiff would have been entitled to retain had the policies not been canceled. When the dock board canceled the policies, plaintiff offered to procure the issuance of other policies in lieu of those canceled and at the same rate. This proposal was refused by the board. Plaintiff now contends that this refusal was a breach of the contract which it had with the board, and it prosecutes the present suit for damages resulting from the alleged breach, amounting to $9,250.93, the amount of commissions lost.

There was judgment in the court below in favor of plaintiff for the full amount demanded, and the dock board appealed.

1. The dock board's acceptance of plaintiff's bid or proposal constituted a contract between it and plaintiff, and this controversy arises over the construction of that contract. Plaintiff's contention is that under the contract it was employed to furnish all the insurance required by the board for a period of three years, and that, when the board canceled the insurance at the end of two years and two months, the board was obligated to accept insurance procured by it in lieu of that canceled. In other words, under plaintiff's construction of the contract, it was given the right and privilege of rewriting the insurance needed to replace that which was canceled, in which event it could have recouped the loss it sustained by the cancellation of the original policies.

The dock board had the right to cancel the policies and to demand the return of the unearned portion of the premiums. That is conceded by plaintiff. The breach of contract of which plaintiff complains is the dock board's refusal to recognize its right to rewrite the insurance. The dock board contends, on the other hand, that plaintiff acted all through as the agent of the insurance companies from whom it received commissions; that by its proposal the board merely invited bids to furnish a certain amount of fire insurance on its property for a certain length of time; that plaintiff, as an insurance agent or broker, was the successful bidder; and that, when plaintiff produced and delivered the policies written by companies acceptable to the board and the premiums were paid, the entire transaction was closed, and it sustained no further contractual relations with plaintiff.

2. Both sides conceded that the entire contract between plaintiff and defendant, such as it was, is set forth in the written pro-

posal or bid submitted by plaintiff and accepted by the board. The written proposal was prepared by the board and addressed to itself. It was intended to be signed by the agents or brokers proposing to procure the issuance of such policies of insurance as the board required. The proposal, in so far as the same need be quoted, reads as follows:

"I, or we, the undersigned, hereby propose to furnish the necessary policies in an incorporated insurance company or companies, said policy or policies to insure and/or indemnify the Board of Commissioners of the Port of New Orleans against loss or damage by fire and lightning to wharves, sheds and/or other structures located along the Mississippi River between Louisiana Avenue and Charbonet Street on the New Orleans side of the Mississippi River and on the banks of the Navigation Canal, New Orleans, Louisiana, for a period of one year and also for three years, from noon, February 16, 1929."

Then follow stipulations to the effect that a rate may be submitted on any one or all of the items included in the proposal; that the responsibility of the insurance company or companies, the form of policy or policies as well as the rates, will be taken into consideration in awarding the insurance; that the form of the policy and the names of the insuring companies proposed must be submitted with the bids; that the companies in which it is proposed to place the insurance must have a satisfactory rating; that, should more than one insurance company or agent bid the same rates and offer the same facilities of service, and these rates are acceptable, the board reserves the right to place the insurance with the successful bidders in whatever proportion the board deems advisable.

Then follows a stipulation providing that as a guaranty that the bidder would fulfill the conditions and agreements of the proposal "we hereby deposit the sum of one thousand dollars ($1,000.00) * * * which we will forfeit to the Board of Port Commissioners in the event of our failure to deliver policies as per our proposal."

3. The plaintiff company received a copy of the above proposal, and became interested. It sent a representative to New York and other places in an effort to induce leading fire insurance companies throughout the country authorized to write insurance in this state to write the policies required by the board. It succeeded in getting several of the companies to agree to assume the risk at a stipulated rate, the total amount of insurance to be distributed as the companies saw fit. When plaintiff made its arrangements with the companies, it submitted its proposal to the board, together with a list of the companies offered and the rate proposed. The board, after investigating the ratings of the companies, accepted the proposal. Whereupon plaintiff deposited with the board $1,000, which it agreed to forfeit in case it failed to carry out its proposal. The policies were delivered to the board, accepted, and the premiums paid. Some three or four days later, plaintiff requested the Board to return its deposit of $1,000, which was done.

4. After considering the terms of the written proposal and all the steps taken by the parties leading up to the completion of the

contract and their conduct subsequent thereto, we are left in no doubt as to the intent and purpose of each. Manifestly what the dock board wanted, and what it intended to procure, was insurance on its property to protect it against loss by fire for a period of three years, at the best rate possible. There is nothing in the proposal to suggest, nor is there anything in all the negotiations to indicate, that the board intended to employ plaintiff as its agent or broker.

The dock board invited plaintiff, which is an insurance agent or broker, and others engaged in the same line of business, to submit proposals "to furnish the necessary policies in an incorporated insurance company or companies," that is, to procure the writing of the required contracts of insurance, not by plaintiff or any other agent or broker to whom the proposals were submitted, but by "an incorporated insurance company or companies." Plaintiff is not engaged in the business of writing fire insurance, but, according to the allegations made in paragraph IV of its petition, is "an insurance agent in the city of New Orleans, and *represents a number of companies writing insurance*, and in addition thereto your petitioner acts as broker in placing insurance in companies represented by other agents than your petitioner." (Italics ours.)

Insurance companies transact their business through agents who solicit for them. When plaintiff set out to procure the writing of the insurance contracts required by the board, he was acting, not as agent of the board, but as agent for the companies he represented. He induced the companies

he represented to assume the required risks and to write the policies. It was then in position "to furnish the necessary policies" or contracts of insurance written, not by itself, but by the companies it represented as agent.

■ Up to that moment there were no contractual relations between plaintiff and the dock board. The invitation by the board to submit proposals and the submitting of them by plaintiff bound neither party. But, when plaintiff submitted its proposal, and it was accepted by the board, there arose a contract between them, and each was bound to perform what was promised. What plaintiff had promised to do, and all it was bound to do, was to "furnish the necessary policies," and, to guarantee the faithful performance of its contract, it deposited with the board $1,000. Defendant's obligation toward plaintiff was to accept and pay for the insurance.

When the policies or contracts of insurance were accepted and paid for by the board, each of the parties had accomplished what it set out to do. Plaintiff had secured the business, and for its services the various companies paid to it a commission. The dock board had the contracts of insurance it wanted, which was all it set out to get.

5. But plaintiff contends that the board's acceptance of its proposal constituted a continuing contract of employment as agent or broker to furnish all insurance needed by the board for a period of three years.

This contention, we think, is refuted by the language of the proposal itself, and also by the subsequent conduct of the parties. All that plaintiff proposed to do and

all that it was expected to do is set out in plain, simple terms in the proposal, and is that (quoting from the proposal): "I, or we, the undersigned, hereby propose to furnish the necessary policies in an incorporated insurance company or companies." The "policies" referred to are necessarily such as the board had indicated in the proposal that it desired. Plaintiff "proposed" to furnish them, and did.

The last above quotation is from the major, and, we may say, dominating, section of the proposal. It is separated from that which follows by a comma, and clearly all that follows in that paragraph is only descriptive of the "policies" which plaintiff proposed to furnish.

Immediately following the comma is this: "Said policy or policies (referring to the policies to be furnished) to secure and/or indemnify the Board of Commissioners of the Port of New Orleans against loss or damage by fire and lightning to wharves, sheds and/or other structures located along the Mississippi River between Louisiana Avenue and Charbonet Street on the New Orleans side of the Mississippi River and on the banks of the Navigation Canal, New Orleans, Louisiana, for a period of one year and also three years."

Counsel for plaintiff, in a most able and ingenious argument, say that the closing clause of the above-quoted section of the proposal, to wit, "for a period of * * * three years," has reference to or qualifies the word "furnish" used in the opening clause of the proposal, and that the proposal should be construed to mean that plaintiff proposed

to "furnish, for a period of * * * three years, the necessary policies," etc.

The arrangement of the entire sentence does not indicate that the parties so intended. If they had, the phrase "for a period of three years" would have been inserted immediately following the word "furnish" instead of being completely disconnected and so far removed from it.

The quoted phrase appears in the part of the section of the proposal which is descriptive of the policies and of the property to be covered. The phrase qualifies the verb "insure" or "indemnify."

What the entire sentence means is that plaintiff proposed "to furnish the necessary policies," and as descriptive of them "said policies to insure * * * the Board of Commissioners * * * against loss or damage by fire * * * to wharves * * * for a period of three years." There is no ambiguity whatever in this language.

6. The subsequent conduct of the parties clearly indicates that each considered the transaction closed when the policies were accepted and paid for. Plaintiff deposited with the dock board $1,000 as a guaranty that it would "fulfill the conditions and agreements of this proposal," which was to furnish the necessary policies. When those policies were delivered and paid for, plaintiff requested the return of its deposit, which request was granted. This is significant in view of the purpose for which the deposit was made. That purpose was to guarantee that plaintiff would "fulfill the conditions and agreements of this proposal"; that is, that it would carry out the contract it had made with the board.

At the time plaintiff requested the return of its deposit and the same was returned, all the insurance contracts which plaintiff had agreed to furnish had been delivered, accepted, and paid for. The very fact that plaintiff requested the return of its deposit and the fact that the board returned it satisfies us that each of the parties considered that the contract between them was at an end. If plaintiff's contract had been a continuing one, as it now claims, that is, if plaintiff had bound itself to furnish for the defendant, and if defendant obligated itself to accept from plaintiff, all the insurance contracts it required through and during the full period of three years, there would have been the same reason for leaving the deposit with the board during the entire three years as there was for demanding it originally, which was to guarantee the faithful performance of the contract. This conduct of the parties dispels all doubt as to the construction they themselves then gave to their mutual obligations. Even if it be conceded, as counsel for plaintiff argue (and we do not concede it), that there is ambiguity in the major section of the proposal, and therefore doubt as to what the parties intended it to mean, their subsequent conduct resolves that doubt in favor of the proposition that each of them considered their contract at an end when the policies were delivered and paid for.

7. The argument that plaintiff remained bound to furnish defendant such insurance as it may have needed through the three-year period is disposed of by our holding that plaintiff was employed by defendant for the sole and only purpose of procuring the original policies.

■ 8. The well-recognized rule is that:

"If the broker or agent is employed only to procure the policy, his agency is not continuing; it ceases upon the execution and delivery of the policy to the insured."

See 32 C. J. 1086, and the many authorities cited under note 15.

In Hermann v. Ins. Co., 100 N. Y. 411, 3 N. E. 341, 53 Am. Rep. 197, it was held that the authority of a broker employed to procure insurance for his principal, such broker not being a general agent to place and manage insurance on his principal's property, terminates with the procurement of the policy.

In Insurance Companies v. Raden, 87 Ala. 311, 5 So. 876, 13 Am. St. Rep. 36, it was held that an agency to procure insurance is ended when the insurance is procured and the policy is delivered to the principal.

Counsel for plaintiff in their brief (page 22) say:

"Tanenbaum, Son & Co. v. Rothenberg & Co., 201 App. Div. 272, 194 N. Y. S. 315, 317, was an action on a contract exactly like the one here."

We have read that case, and find that counsel are in error. The facts of that case are that the defendant agreed to procure its fire insurance from plaintiff exclusively for a period of five years at fixed rates, and to allow him to re-equip and add to the sprinkler system and make other improvements deemed requisite to provide fire protection. It employed plaintiff as its general agent, and, in case it subleased any of the property, it agreed to exact of its tenants an agreement to procure their insurance from

plaintiff on the same terms as if it had been procured for defendant under the agreement. The contract was clear and explicit. Defendant employed plaintiff as its sole agent to procure all insurance desired for a fixed period and at a fixed rate.

Counsel also cite Tanenbaum v. Simon, 40 Misc. 174, 81 N. Y. S. 655, 656, as being in point. In that case the agreement was that:

"T. Tanenbaum & Co. * * * is hereby authorized to and shall, as agents of the parties of the second part and for their account, procure and pay premiums for all fire insurance required by the parties of the second part, not less however than the market value of any time, of the property insured, for the period of time from the 23d day of Dec., 1897, to the first day of Feb., 1901, upon * * * use and occupancy, building," etc.

Defendants complied with their contract in every detail, except that they failed to procure insurance on the "use and occupancy" of the buildings. Plaintiff brought suit for the difference in the cost of insurance stated in the contract and the cost at which it could have been procured, and there was judgment in their favor.

Other cases cited by counsel were decided by the same court, and involved the same or similar contracts. These cases are not pertinent to the issue presently under consideration, as the contracts were entirely different.

The cases cited by counsel fall under the general rule that, when a broker or agent is intrusted with the duty of keeping the owner's property insured, taking out policies thereon, renewing the same when they expire, paying premiums to be repaid to the broker by the owner, and obtaining other insurance in lieu of expired and canceled policies, the owner who breaches such contract must respond in damages.

For the reasons assigned, the judgment appealed from is reversed, and it is ordered that plaintiff's demands be rejected and its suit dismissed at its costs in both courts.