185 So.2d 542 (1966)
UNIVERSAL C.I.T. CORP., Plaintiff-Appellant,
v.
J. F. KENNEDY, Jr., et al., Defendants-Appellees.
No. 6606.
Court of Appeal of Louisiana, First Circuit.
April 4, 1966.
Rehearing Denied May 9, 1966.
*543 Richardson & Gallaspy, Bogalusa, for appellant.
Hilary J. Crain, of Watts & Crain, Franklinton, H. Martin Hunley, Jr., of Lemle & Kelleher, New Orleans, for appellees.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, J.
BAILES, Judge.
The controversy between the parties in this suit arises out of a claim of coverage under the physical damage provisions of a collision policy which defendant Travelers Indemnity Company issued to defendant J. F. Kennedy, Jr. The plaintiff is the mortgagee of a chattel mortgage granted by defendant Kennedy on a certain automobile covered by the collision policy in question. This action followed the refusal of defendant Travelers Indemnity Company to pay on the ground of cancellation of the policy *544 by mutual consent prior to the date of the accident.
For a cause of action against defendant Kennedy, plaintiff alleges it is the holder and owner of a promissory note made and executed by Kennedy on which there is an unpaid balance of $2,908.11, which represents the unpaid balance of the purchase price of the vehicle on which the insurance was effective. Plaintiff alleges during the effective period of the policy issued by Travelers the vehicle was totally destroyed in a wreck on or about June 15, 1963, or within a few days thereof. Anticipating Travelers' defense of policy cancellation by mutual consent, plaintiff alternatively alleges Murphy W. Galloway, Jr., acting on behalf of Galloway Insurance Company, Inc. (Travelers' agent), and Travelers, represented to plaintiff another policy of insurance would be issued to take the place of the policy cancelled by Travelers. Plaintiff alleges the said agent negligently erred and omitted to issue another policy for which the agent and his principals are liable for the loss sustained.
Defendant Kennedy made no appearance and a preliminary default was entered as to him. The defense of Galloway Insurance Agency, Inc., and Murphy W. Galloway, Jr., is the plaintiff voluntarily surrendered the policy for cancellation and consented to the cancellation. Travelers defends on the grounds the plaintiff voluntarily surrendered the policy for cancellation; the insured was advised by letter his policy with Travelers had been cancelled; and further Travelers cancelled the policy on June 5, 1963, allowed the insured a return premium of $91.08, and notified the plaintiff of the cancellation of said policy.
The trial court concluded from the evidence before it the policy of insurance was cancelled by mutual consent of Travelers and the plaintiff. The plaintiff's demands were rejected against all defendants except Kennedy, against whom judgment, as prayed for, was rendered. Plaintiff appealed.
There is no controversy to the fact of the issuance of the policy or of the accident. There is uncontroverted proof in the record to substantiate the loss sustained by the insured amounts to $2,850.
The only question presented to us in the primary demand of plaintiff is whether the policy of insurance was legally cancelled on June 5, 1963, and thereby not in force at the time of the accident on June 21, 1963.
In written reasons for judgment, the trial court, inter alia, stated:
"J. F. Kennedy, Jr., one of the defendants herein, purchased an automobile which was financed through Universal C. I. T. Credit Corp., the plaintiff. In connection therewith, a collision insurance policy was obtained from Travelers Indemnity Co., also made a defendant herein. The policy was written through Galloway Insurance Agency, Inc., which is operated by Murphy W. Galloway, Jr. The record further reveals that, because of the accident experience on the policy, Mr. Galloway reached the conclusion that it would be canceled by Travelers. He therefore went to plaintiff's office, which is next door to his own, and advised them that the policy would be canceled. Mrs. Phillips, the only witness for plaintiff who testified that Mr. Galloway came in and said that he wanted to pick up the policy and that it would be replaced. Mr. Galloway testified that he only told them that the policy would probably be canceled, and did not ask for its surrender.
"No matter what the precise circumstances were, the policy was in fact surrendered to Mr. Galloway by the them manager of the office, Mr. Deupree. On the same day, Mr. Galloway addressed a letter to Mr. J. Frank Kennedy, Jr., advising him that a new policy would have to be written, and that the old policy was being sent back to the writing company. According to the cancellation change slip which was sent to Mr. Galloway by Travelers, the company canceled the policy *545 on June 10, 1963, effective as of June 5, 1963. The return premium was computed on the `short rate' basis, which is utilized when a policy is canceled at the request of the insured. According to Mr. Galloway's letter to Mr. Kennedy of June 5, he stated that the policy was being canceled at the company's request.
"On June 21, 1963, the automobile covered by the policy was involved in an accident and was found to be a total loss. According to the record, its value as of that time was $2,850.00. On June 24, 1963, Mr. Galloway wrote a check to J. Frank Kennedy and plaintiff for $93.58, representing the return premium.

* * * * * *
"It would appear that the main question in this case is whether or not an insured, or one having an interest by a policy, can voluntarily surrender that policy for cancellation and subsequently be allowed to claim that the policy was not cancelled.
"As stated in sub-section C of Section 637, the surrender of the policy in a situation such as this creates a presumption that the surrender is concurred in by all persons having an interest insured under the policy. I believe that Mr. Galloway, his insurance agency and Travelers Indemnity Co. can legally rely on that presumption. As a matter of fact, under the clear terms of its contract with Mr. Kennedy, plaintiff herein had a right to buy new insurance in a situation such as this in order to be sure that its interest remain protected. This it failed to do. I do not believe that C.I.T. has been damaged by the acts of any person other than themselves. Certainly, if anyone suffers loss as a result of this case, it will be Mr. Kennedy, whose insurable interest was left unprotected because of the act of the manager of plaintiff.
"It would appear clear that there was mutual consent to the cancellation of this policy as between C.I.T. and Travelers, and this being the case, I do not believe that it was necessary that the other formalities prescribed for in R.S. 22:637 were necessary. I believe that plaintiff is entitled to a judgment against J. F. Kennedy, Jr., under the note and mortgage held by them, but to none of the other relief prayed for."
From our appreciation of the evidence before us in this record we must find the trial court erred in its finding the subject insurance policy was cancelled by the mutual consent of the plaintiff and defendant Travelers. We believe this to be manifest. This is illustrated by the following discussion.
On direct examination of Mr. Galloway, Travelers' agent, by Travelers' attorney, Mr. Crain, we find the following testimony.
Page 51
"Q. What did you say to Mrs. Phillips? (referring to the occasion when he went to the office of C.I.T. to pick up the insurance policy.)
A. I told Mrs. Phillips that the policy would more than likely be cancelled and we were both aware of the underwriting situation, meaning wrecks in the past, and it is not my policy but a company policy to cancel a policy in these respects whenever you have accidents in a row like that and so I did inform them that there would be a cancellation coming down I was sure and I believe I might have asked for the policy at that time if they wanted me to send it back to the Company for cancellation. Of course I don't have any right to demand the policy at all and I have no authority to say that your policy is cancelled.

* * * * * *
Q. What did you do with the original policy?
A. I returned it to the Company for cancellation.
Page 54 By Mr. Hunley
Q. I understand you to say that Travelers Insurance Company did not ask *546 you or instruct you to cancel this policy?

A. That is correct.

* * * * * *
Page 55
Q. And when you went to the office, did you have intention to cancel the policy, to demand the return of that policy?
A. I don't have either the right or authority to demand the return of the policy. I can ask but I can't make or demand that they do anything.
Q. And that is not in the scope of your authority, is that correct?
A. No, it is not.
Q. You have no right then or authority to cancel a policy without instructions from the company and demand a return of that policy, is that correct?
A. Yes
Q. You don't have that authority?
A. No.

* * * * * *
Q. You told them that Travelers would probably cancel in view of that?
A. Yes
Q. And what was your purpose in telling them that ahead of time?
A. So they would become aware of it, they would know that was coming down because prior to that they had had some trouble with placement of this policy with I became aware of (sic) and it is not only one single company but just knowledge of the insurance field as a whole and knew that when these accidents occurred and under the situation which they occurred there would be a cancellation coming down, normal procedure, so I was relating these facts." (Emphasis by the Court)
Even though Mr. Galloway steadfastly maintained throughout his testimony he did not go to plaintiff's office to pick up the policy, and his insistence the policy was voluntarily surrendered to him, we find it totally irreconcilable to this position for him, on the same day he picked up the policy, to write Mr. Kennedy the following letter.
This letter written by Mr. Galloway was dated June 5, 1963, addressed to Mr. J. Frank Kennedy, Jr., General Delivery, Angle, Louisiana.
"Dear Mr. Kennedy:
"Please drop by the office at your earliest convenience and I will go over a new policy for your auto with you. I can write it two ways and I would like for you to decide the way you wish to be covered.
"In the meantime I am returning your present policy to the writing company at their request.
"It is important that you contact me so that we can go ahead with another policy.
 "Sincerely,
 s/ Murphy W. Galloway, Jr.
 t/ Murphy W. Galloway, Jr."
On October 9, 1963, plaintiff wrote Travelers the following letter:
"Please advise the date of cancellation on the above captioned policy written by Galloway Insurance Agency, Inc., Bogalusa, Louisiana."
In reply, Travelers advised plaintiff the policy was cancelled on June 5, 1963, at the insured's request. The date of issuance of the cancellation was June 10, 1963, effective June 5, 1963.
The plaintiff did not produce Mr. Deupree, the then resident manager of its office to give testimony relative to this transaction for the reason he was no longer *547 in its employ and his whereabouts were unknown. We find no unfavorable presumption is to attach from his failure to testify.
Mrs. Wilda Phillips, a discount clerk in the office at that time was called by the plaintiff as a witness.
She testified Mr. Galloway came to plaintiff's office and stated he wanted to pick up the policy Travelers had issued to Kennedy. He stated he had written Mr. Kennedy to come in and discuss replacing the policy. She admitted it was possible Mr. Galloway might have stated Travelers would probably cancel the policy, however, it was her understanding when the policy was cancelled another policy would be obtained; and that there was no date discussed as to when the Travelers policy would be cancelled or a specific date when another policy would be issued
Mr. Kennedy testified after the last wreck he went to Mr. Galloway's office to talk to him about the repair of the automobile. It was then he learned he had no insurance and the policy had been cancelled. He asked about the refund and it was then when Mr. Galloway wrote the check identified as exhibit P-5 for short rate refund of premium. Also, he testified the last accident occurred on June 21, 1963.
There is no doubt in our minds Mr. Galloway went to plaintiff's office to obtain the policy for cancellation. We are also convinced Mr. Galloway left plaintiff's manager with the definite impression another policy would be issued for their protection before this policy was cancelled. This is confirmed by Mr. Galloway's letter to Mr. Kennedy. We are convinced Mr. Galloway was equivocal in stating to Mr. Deupree Travelers was going to cancel the policy. He used indecisive words as "probably" and "likely," etc. His answer to plaintiff's petition alleges such equivocal statements.
We find it unreasonable to attribute to plaintiff's manager a request for cancellation of the policy knowing there would be no coverage. It would be unreasonable to attribute to plaintiff a request for cancellation of the policy when such cancellation with the return premium calculated at a short rate in view of a pro rata return when the cancellation is initiated by the insurer.
In view of the testimony explaining how Mr. Galloway came into possession of the policy of insurance from plaintiff, the burden of proof is on the insurer to show facts which constitute positive and unequivocal proof of understanding of cancellation of policy in absence of compliance with LSA-R.S. 22:636 relating to written notice of cancellation.
At the time of delivery of policy by plaintiff to insurer's agent there was no clear, definite, positive and unequivocal understanding such as to put plaintiff on notice the policy was cancelled.
There are two factors existing herein which must be kept in mind and are controlling of the issue presented. First, there was no unequivocal statement or notice given plaintiff that Travelers Indemnity Company was cancelling this policy of insurance. See testimony of Mr. Galloway quoted above. And further, we reiterate, we cannot ascribe to the plaintiff a request or desire on its part to cancel an existing policy. Plaintiff did deliver the policy of insurance to Galloway but certainly with the understanding other like coverage would be afforded by another policy, and which was not delivered. Secondly, it cannot be said Kennedy, the named insured in the policy, concurred in the surrender of his policy by the plaintiff, and no presumption is created that such surrender was concurred in by him under R.S. 22:637, Paragraph C.
Mr. Kennedy was ignorant of the surrender of his policy by plaintiff (even this surrender we hold supra was a conditional surrender as to plaintiff), therefore it cannot be said he waived notice of cancellation for, as was said in Edenborn v. Kirkland (1915) 136 La. 1020, 68 So.111, *548 "waiver is matter of consent, and a person cannot be said to have consented to a thing of which he was ignorant."
A cancellation must be strictly construed because it is an action to nullify an effective and binding contract. It is an act of recission invoked by one of the contracting parties. The cancellation must be clear and unequivocal so as to produce in the mind of the other contracting party no doubt of the fact of cancellation and termination of the contract of insurance.
In Skipper v. Federal Insurance Company (1959) 238 La. 779, 116 So.2d 520, our Supreme Court said:
"In cases where the insurer defends on the ground of cancellation, the insurer carries the burden of establishing the facts which relieve or limit its liability."
See Paz v. Implement Dealers Mutual Insurance Company (1956) La.App., 89 So.2d 514.
There is no dispute or controversy involved herein concerning the lack of notice of cancellation under the terms and conditions of LSA-R.S. 22:636. We find plaintiff was entitled to notice of cancellation under the terms of the policy which provides:
"The company reserves the right to cancel such policy at any time as provided by its terms, but in such case the company shall notify the Lienholder when not less than ten days thereafter such cancellation shall be effective as to the interest of said Lienholder therein and the company shall have the right, on like notice, to cancel this agreement."
In the absence of such notice, the policy of insurance, at the time of the accident of June 21, 1963, was in full force and effect.
We find no facts in this record to justify our consideration of invoking of penalties or the assessment of attorneys fees as provided under LSA-R.S. 22:658.
For the foregoing reasons, the judgment of the trial court is reversed, and there is judgment herein in favor of plaintiff and against Travelers Indemnity Company in the sum of $2,850, together with legal interest thereon from date of judicial demand until paid, and for all costs of these proceedings.
Reversed and rendered.