291 So.2d 422 (1974)
I. C. REALTY, INC.
v.
CLIFTON CONDUIT COMPANY, DIVISION OF GENERAL CABLE CORPORATION, et al.
No. 6080.
Court of Appeal of Louisiana, Fourth Circuit.
March 8, 1974.
*423 Adams & Reese, Robert B. Nolan, New Orleans, for I. C. Realty, Inc., plaintiff-appellee.
William A. Porteous, III, Porteous, Toledano, Hainkel & Johnson, New Orleans, for American Southern Ins. Co., defendant-appellant.
Before REDMANN, STOULIG and BOUTALL, JJ.
BOUTALL, Judge.
This is a suit by plaintiff to recover damages to its building as a result of the negligent operation of a truck allegedly insured by American Southern Insurance Company. The damages and negligence have been stipulated, and the only issue before us is whether a policy issued by American was in effect at the time of the accident. The trial court held that the policy was in effect and rendered judgment against American. American has appealed.
The facts are for the most part uncontested. Jerry Delchamps of Delchamps Insurance Agency had contacted a neighboring business, Efficient Drayage & Delivery Service, Inc., to solicit insurance business. As a result, when Efficient Drayage was in need of insurance coverage on its trucks, the President, Ronald Garlepied, asked Delchamps for a quotation on surplus line automobile insurance. Delchamps approached Leon Irwin Company, Inc. (Lico) the general agent for American Southern Life Insurance Company, for a quotation, and after receiving same informed Garlepied. Garlepied then announced that he would take the policy and made a down payment on it, and made provisions for other payments with a finance company. On September 12, 1968, American Southern issued a liability policy to Efficient Drayage, the effective date of the policy being September 11, 1968 for a period of one year. Both the bill for the policy and the policy itself were sent to Delchamps by Lico. Garlepied requested Delchamps to deliver the policy to him, but instead Delchamps delivered a photostatic copy of the policy, and apparently retained the policy himself for several days. On or about September 17, 1968 Delchamps returned the policy to Lico with an inscription written on the face of it "Please Cancel". He then informed Lico that the customer had never taken the policy and Lico cancelled the policy without making any charge to Delchamps for its issuance. Thus, through this obviously fraudulent scheme, Delchamps continued to receive premium payments from Efficient Drayage who believed itself to be insured, and was not required to pay anything to Lico, who believed the policy to have been never accepted. *424 Unfortunately, for all concerned, on October 31, 1968, one of Efficient Drayage's trucks damaged plaintiff's building as stipulated, and the scheme came to light after Delchamps failed to negotiate a settlement.
As we view the situation, it is clear that there was a valid policy issued and in effect from September 11, 1968 onward. Efficient Drayage had agreed to accept the policy and had paid for its issuance. Lico had actually issued the policy and forwarded it to Delchamps to present to Efficient. As Lico's employee testified, the policy was effective, and Lico looked for payment to Delchamps, not to Efficient Drayage. Thus there was agreement amongst all of the parties for the policy bargained for and the price was paid.
The issue narrows itself to the effect of the purported cancellation on September 17th. The record shows that Efficient Drayage did not attempt, or authorize anyone to attempt, cancellation, but in fact was continuing payment of the premiums. Although Delchamps could be considered as the agent of Efficient Drayage in procuring the policy, certainly he had no authority to cancel the policy. The evidence does not show who wrote the words "Please Cancel" upon the face of the policy. Efficient Drayage did not and Lico's employee has no knowledge of who may have written the words. Presumably it may have been done by Delchamps.
The statutory provisions relating to cancellation of automobile insurance policies are contained in LSA-R.S. 22:636, 22:636.1, and 22:637. An examination of those statutes discloses that there is no provision therein permitting cancellation by an insurance broker without authority from the insured and in fact contrary to the insured's wishes. Nevertheless, the defendant insurer argues to us that the insured is bound by the broker's action, and no notice of cancellation is necessary. With this contention we cannot agree. Lico's employee testified that, under its arrangement with brokers such as Delchamps, the policy was mailed to Delchamps, and he was billed for the cost. The company then looked to Delchamps for payment of this amount and had no dealings whatsoever with the insured, not even for non-payment of premiums, unless the broker notified the company that the policy should be cancelled. Upon this notification, the company would send out a notice of cancellation to the insured. Under this system, it is apparent that the broker is truly a broker, and that he neither represents the insured nor the company, but must treat with both equally. At this time it should be noted that coincident with the cancellation of this policy, Delchamps caused the cancellation of approximately forty others. Since the cancellation was not by the insured under the provisions of LSA-R.S. 22:637 the company should have been suspicious of the unprecedented return of such a large number of policies and made inquiry to protect itself. In any event, for the cancellation to be effective, it must be in accordance with law, and we know of no provision of law providing for cancellation by a broker without authority of the insured or notice to the insured.
It has been held that a person authorized to secure insurance for an insured does not ipso facto, have authority to cancel the insurance. Nabors v. Commercial Union Assurance Company, 125 La. 378, 51 So. 429 (1909). Once the insurance was secured the agency of the broker or agent employed is not continuing but ceases. See Leon Irwin & Co., Inc., v. Board of Commissioners of Port of New Orleans, 176 La. 13, 145 So. 123 (1932).
Our law requires that where the insurer defends on the ground that the policy was cancelled, the insurer carries the burden of establishing facts which will relieve or limit liability. Skipper v. Federal Insurance Company, 238 La. 779, 116 So.2d 520 (1959). In such cases, the insurer must show facts which constitute positive and unequivocal proof of understanding of cancellation of the policy. Universal C. I. *425 T. Corp. v. Kennedy, 185 So.2d 542 (La. App. 1st Cir. 1966).
The evidence in this case shows no proof whatever that the insured desired to surrender and cancel the policy. The insurer cancelled at Delchamps' request because the request was "thought to have come from the insured.", but made no inquiry nor issued notice of cancellation, because it apparently believed in and relied upon Delchamps' statement, which, of course, was totally false.
For the above reasons, we are of the opinion that the policy was not properly cancelled and was still in effect at the time of the collision. We thus affirm the judgment of the trial court casting American Southern Insurance Company in judgment. Cost of the appeal to be paid by appellant.
Affirmed.