COLE, Judge.
Louisiana Department of Transportation and Development (DOTD) appeals a judgment rendered in favor of United Bridge Company, Inc. The issue presented is whether or not appellee has proven by a preponderance of the evidence DOTD prevented United Bridge from following specifications in fulfillment of a bridge construction contract. United Bridge alleges DOTD interfered with the work and forced United Bridge to accept DOTD’s interpretation of certain specifications concerning concrete mixing. United Bridge argues this interference resulted in part of the project being rendered unacceptable which DOTD ordered replaced. Plaintiff seeks to be reimbursed for its expenses in reconstructing that part of the bridge span. The parties stipulated to damages of $36,250.27 in the event liability was proven at trial. After a careful examination of the record we find the trial court was clearly wrong in concluding plaintiff proved its case by a preponderance of the evidence. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), rehearing denied 1979.
This case arose from the “Bayou Chene Bridge and Approaches” project in Jefferson Davis Parish. The contract provided the specifications for the project would be governed by the 1977 edition of the Louisiana Standard Specifications for Roads and Bridges. On July 26, 1978 appellee was in the process of laying a slab for a bridge span when a dispute arose as to the interpretation of § 901.12(c) of the specifications. This section dealt with the mixing standard for concrete and read in part as follows:
“. . . When a truck mixer is used for complete mixing, each batch shall be mixed for not less than 70 nor more than *320 100 revolutions of the drum or blades at the rate of rotation designated as mixing speed by the manufacturer of the equipment on the metal plate on the mixer....
“When the prescribed water is added at the batching plant and the slump is on the low side at the delivery site, it will be permissible to add a minimum of 75 percent of the mixing water at the time the cement and aggregates are added at the batching plant and the remaining mixing water at the job site, provided additional mixing is performed at the job site to insure thorough incorporation of the added water into the mix. The truck mixer shall be equipped with means of accurately measuring the amount of water used in each batch. The additional mixing shall be within the range of 20 to 30 revolutions at mixing speed. Water added at the job site shall not exceed the water-cement ratio.”
Three interpretations of this section were offered at trial. Mr. William Hansel, superintendent for United Bridge, testified he interpreted the section to mean that as long as the water-cement ratio and time limits were met, there was no limit as to how often water could be added or how many revolutions could be made at the job site. He stated the 100 revolution limit pertained to situations where all water was added at once at the cement plant and had no application at all to water added at the job site. In the case the concrete had been turned 70 times at the plant. Mr. Hansel contended it could have been turned as many times as necessary at the job site in order to achieve the desired moisture.
Mr. Fitzhugh Cox, District Construction Engineer for DOTD testified he interpreted § 901.12(c) to mean the total number of rotations could not exceed 100. Therefore, if a batch had been rotated 70 times at the plant it could only have been rotated 30 times at the job site. He stated too much mixing would weaken the strength of the concrete.
The third interpretation is that of DOTD as set forth in an interdepartmental memorandum circulated after this incident. In a memorandum dated August 7, 1978, DOTD stated § 901.12(c) was to be interpreted to mean that the total maximum revolutions allowable was 130, 70 at the plant and 30 revolutions for each of the two allowable additions of water at the job site.
The information concerning the various interpretations of the specification is pertinent only in understanding the background of the controversy. The ultimate determination to be made upon review is a purely factual one. Did DOTD prevent Mr. Hansel from adding water pursuant to his own interpretation of the specification? We find the testimony shows plaintiff has failed to prove by a preponderance of the evidence that Mr. Hansel was impeded from adding the extra water to the batch. To the contrary, we find defendant DOTD has proven Mr. Hansel proceeded to add the water as he desired, in spite of the protests of the DOTD employees.
At trial Mr. Hansel testified he added ten gallons of water to the mixing truck in question (the truck was officially truck # 3 but is referred to in the record as “the second truck” because it was second in line). He stated the concrete was still too dry so he attempted to add water a second time but was prevented from doing so by Mr. LeBlanc, the project engineer. No other witnesses testified to support Mr. Hansel’s testimony. One exhibit, a “batch ticket” showed the truck in question had turned only 25 revolutions at the job site, indicating water was added only once.
Testimony by three DOTD employees directly contradicted Mr. Hansel’s testimony. Lester LeBlanc testified Mr. Hansel added water three times to the truck, turning the truck 20 to 30 revolutions after each addition. He stated he advised Mr. Hansel not to add more water after the first addition, but Hansel ignored his warnings. Mr. Le-Blanc specifically told Hansel that it was against specifications, as interpreted by Mr. Cox, to add water more than once.
Mr. John Young, a certified concrete technician for DOTD testified Hansel added *321 water three times with twenty to thirty revolutions after each. He stated he heard Mr. LeBlanc inform Mr. Hansel that specifications had been broken when water was added the second time. Young acknowledged the batch ticket showed only 25 revolutions but said the employee marking the ticket was working his first day of the job at that time. He felt the employee didn’t fully understand his duties in marking the revolutions and marked only the last cycle of turns rather than the complete number. The DOTD employees felt it was useless to correct the ticket at the time because they were well aware specifications had been violated and the slab was going to have to be torn down. He explained the employee who wrote the ticket, Darold Watson, left the department a few months after the incident in question. He was not called as a witness.
Robert Broussard, another certified concrete technician and inspector for DOTD, gave testimony corroborating that of Le-Blanc and Young. He was present on the job site at the time of the incident and testified unequivocally Hansel added water to the truck three times with approximately 20 revolutions being applied after each addition. He concluded his additional testimony, if adduced, would be substantially the same as that of Mr. Young.
A fourth employee of DOTD, Mr. Fit-zhugh Cox, testified he had a pre-job conference with Mr. Hansel and explained his interpretation of the section dealing with mixing revolutions and addition of water. (Mr. Hansel did not have recall of any such meeting or discussion.) Mr. Cox stated Mr. Hansel did not question his interpretation of the section at the pre-job meeting. Cox testified Hansel called him from the job site on July 26, 1978 to inform him of the trouble with the dry concrete. He said no questions were raised at that time about the addition of more water. Hansel asked if he could proceed with the work by putting in a horizontal joint. Cox informed him a joint would not be satisfactory and the slab would have to be torn out.
In his brief reasons for judgment the trial judge indicated he was impressed by the batch ticket which showed the concrete had been turned only 25 times at the job site. We are satisfied with the explanation given by John Young concerning the error made by the new employee. The trial court noted the employee who wrote the batch ticket, Darold Watson, was not called as a witness. This statement alludes to a negative inference that is sometimes drawn from the failure to call a witness. We feel such an inference is unjustified in this case. Professor George W. Pugh discussed this inference in a law review article as follows:
“Whether in a particular trial a party’s failure to call a witness is to be used against him is so much a part of the context in which it arises that it is extremely difficult to formulate hard and fast rules which will govern in future cases.” The Work of the Louisiana Appellate Courts for the 1967-68 Term — Evidence, 29 La.L.Rev. 310, 318 (1969).
Mr. Pugh goes on to say that normally the failure to call a witness should not create an inference that the testimony would have been unfavorable. We feel in the context of the present case, no negative inference should be drawn. Mr. Young explained the employee worked for only several months and was no longer employed by the DOTD. In light of the abundance of direct testimony that the mixing truck was turned 60 to 90 times at the job site (20 to 30 revolutions after each addition), DOTD may have deemed it unnecessary to call this witness to explain the alleged error on the ticket. Regardless, the testimony of Darold Watson would seem to be on the side of United Bridge, if called, as the ticket indicated only one addition of water was made at the bridge site. If anything, the failure to call Watson should create an inference or presumption his testimony would not have been favorable to United Bridge. However, since his whereabouts were apparently unknown, no unfavorable presumption should result against either plaintiff or defendant. Universal C. I. T. Corp. v. Kennedy, 185 So.2d 542 (La.App. 1st Cir. 1966).
*322 The trial judge also mentioned there was obviously some ambiguity in the specification, as illustrated by the interdepartmental memorandum circulated later. Although we agree the pertinent specification was ambiguous, the ambiguity is irrelevant to plaintiff’s burden of proof. Plaintiff alleges Mr. Hansel was prevented from adding the water in the manner he deemed to be in accordance with the specifications and this lack of water caused the concrete to be faulty. The evidence shows he did add the water as desired, in spite of the warnings by the DOTD employees. Since we find Hansel added the water three times, the issue of ambiguity of the specification becomes irrelevant. Plaintiff has simply failed to prove his case by a preponderance of the evidence.
For the foregoing reasons, the judgment of the trial court is reversed. Appellee United Bridge is to pay all costs of these proceedings.
REVERSED.