SHORTESS, Judge.
Alexander & Alexander, Inc. (A & A) and Southeastern Fire Insurance Company (SEFIC) appeal suspensively from a final judgment rendered against them in favor of the State of Louisiana, through the Division of Administration, the Louisiana Stadium and Exposition District and HMC Management Corporation (State). The judgment in A & A’s favor and against SEFIC on A & A’s third party demand is also part of SEFIC’s appeal.
FACTS
In March of 1982, the State prepared and issued a bid proposal for special multiperil insurance coverage for the Louisiana Su-perdome. An addendum to this proposal was issued on April 5, 1982. The addendum contained additional loss experience information as well as a paragraph which read:
The Louisiana Stadium & Exposition District and H.M.C. Corp., A/T/I/M/A does require by way of a lease agreement each tenant/exhibitor to provide tenants’ liability insurance coverage. The lease agreement which is executed by each tenant/,exhibitor contains a hold harmless clause.
*755 A & A submitted the low bid and was awarded the contract, with all coverages to commence on May 17, 1982. A & A secured five insurance companies to provide the actual coverage. The State’s proposal called for $1,000,000.00 comprehensive general liability coverage. In order to secure this coverage, A & A contracted with SEF-IC to provide $500,000.00 worth of primary coverage, and American Home Assurance Company to provide $500,000.00 worth of excess coverage. A & A represented that upon acceptance of the bid, policies would be issued providing the coverage listed under the comprehensive general liability portion of the proposal.
After the State notified A & A that its bid had been accepted, A & A called the various companies and received permission to issue binders, with coverage effective as of May 17, 1982. These binders were sent to the State. On May 24, 1982, SEFIC sent A & A a verification of insurance, certifying that comprehensive general liability insurance was in force as of that date.
SEFIC issued the actual policy of insurance through its agent, Organ & Company, Ltd. This policy was dated June 23, 1982. The policy contained various endorsements, in particular Endorsement 8, which read:
In consideration of the premium changes, it is agreed that all lessees will provide the insured and the company with comprehensive general liability certificates of insurance with limits of not less than $500,000.00 combined single limit and that the insurance provided by the lessee will be primary to the insurance provided for under this policy.
Based on this language, SEFIC determined that it would be responsible only for claims which arose when the Superdome was not being leased, and it denied coverage on claims which arose during a leased event.
SEFIC mailed its policy to A & A shortly after June 23. A & A held the SEFIC policy until it had all policies issued in connection with the March, 1982, bid proposal and then forwarded same to the State.
Even before the State received a copy of the SEFIC policy, a meeting was held between representatives of the Superdome, A & A, and SEFIC to discuss SEFIC’s failure and/or refusal to handle most of the claims submitted to it. After this meeting A & A informed SEFIC that it felt that Endorsement 8 was at variance with what was called for in the bid proposal. After attempting to negotiate its differences with A & A, SEFIC exercised its right to cancel the policy effective December 22,1982, pursuant to the agreement under the bid proposal.[1]
A & A attempted to obtain the same coverage for the same premium, but was unable to do so. The State let a new bid but the replacement policy carried a higher premium. Coverage for the period from December 22, 1982, to May 17, 1983, cost $29,600.00 more than the SEFIC premium.
The State sued A & A and SEFIC. A & A filed a third party demand against SEF-IC. After trial, the trial court cast A & A for the $29,600.00. SEFIC was cast for $57,212.57, which represented claim settlements, investigative expenses, and penalties and attorney fees as provided for by LSA-R.S. 22:658. Judgment was also granted in favor of A & A on its third party demand against SEFIC in the amount of $29,600.00. It is from this judgment that A & A and SEFIC appeal.
RELATIONSHIP BETWEEN SEFIC AND THE STATE
SEFIC’s coverage became effective on May 17, 1982. On June 23,1982, SEFIC issued a policy evidencing its version of what risks were covered. This policy included Endorsement 8. The trial court’s reasons for judgment provided, in this respect, as follows:
It appears that the inclusion of endorsement # 8 and the subsequent denial of claims by Southeastern was an attempt to reform the contract after the *756 frequency of claims exceeded their expectations. This is evidenced by the fact that Southeastern had been setting aside reserves on all claims but it was not until September and October or some four months after the policy went into effect that they began to send back these claims and deny coverage. The contention by Southeastern is that the only primary coverage it was to provide was during non events such as tours whereas it afforded excess coverage during events. This is not in line with what was intended by the parties when the contract was bid. Therefore this court finds that endorsement #8 was contrary to the contract between the parties, and therefore an attempted reformation of the contractual agreement.
The evidence adduced at trial supports these findings. In the absence of manifest error, the trial court’s findings of fact will not be disturbed on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The next issue is whether SEFIC breached this contract of insurance. The trial court found that SEFIC refused coverage on claims which the contract of insurance obligated it to cover. By September when a claim was filed, SEFIC simply sent it to the liability insurer of the lessee who happened to have occupied the Superdome on the date of the claim. When the lessee’s insurer returned the claim because the liability was the State’s, the State was forced to investigate and handle the claim itself. The trial court found that a policy of liability insurance was in effect from May 17 to December 22, 1982, and that these claims were of the type that SEFIC had agreed to cover under its policy. So SEFIC was liable for said claims. It was not clearly wrong in so finding.
The trial court also found that SEF-IC’s refusal to pay said claims made it liable for penalties and attorney fees under LSA-R.S. 22:658. An insurer must take the risk of misinterpreting its policy provisions. If it errs in interpreting its own insurance contract, such error will not be considered as a reasonable ground for delaying payments of benefits, and it will not relieve the insurer of the payment of penalties and attorney fees. Carney v. American Fire & Indemnity Co., 371 So.2d 815, 819 (La.1979), Gulf-Wandes Corp. v. Vinson Guard Service, 459 So.2d 14 (La.App. 1st Cir.1984), writ denied, 464 So.2d 312 (La.1985). The trial court was not clearly wrong in subjecting SEFIC with the provisions of LSA-R.S. 22:658.
We affirm that portion of the judgment in favor of the State against SEFIC.
RELATIONSHIP BETWEEN A & A AND THE STATE
The contract between A & A and the State required A & A to provide a contract of insurance in accordance with the bid proposal to the State, and the State agreed to pay a certain sum of money for the insurance. The State paid, fulfilling its obligation, so the issue is whether A & A breached its obligation to provide the insurance.
The State paid for general liability insurance on the Superdome with $1,000,000.00 in coverages. It was SEFIC’s position that its policy provided excess rather than primary coverage because of its Endorsement 8, and it cancelled the policy. The State did not get what it bargained for and was forced to re-let bids in order to obtain the coverage it desired at an additional cost of $29,600.00. The trial court cast A & A for that amount, holding:
What duty was owed to the State by the procuring agent, Alexander, on a public bid for insurance coverage? When Alexander submitted its bid, it certified that it had carefully examined the instructions, conditions and general specifications of the State’s proposal according to regular standards. Alexander promised to furnish insurance policies in conformance with the State’s specifications. The problem arose when Southeastern cancelled its policy and, for all practical purposes, denied coverage, leaving the State void of insurance between May 17, 1982 through December 22, 1982. Alexander had relied on an oral commitment by Organ, insofar as their *757 coverage was concerned, when bidding this State proposal. The contract was awarded, and coverage supposedly took effect. Thereafter came the written binders wherein appears the ever important endorsement # 8.
“In consideration of the premium charges, it is agreed that all lessees will provide the insured and the company with comprehensive general liability certificates of insurance with limits of not less than $500,000.00 combined single limit and that the insurance provided by the lessee will be primary to the insurance provided for under this policy.”
This added a twist in that this could be interpreted as out of sync with the State’s bid specifications. After much discussion and correspondence, Southeastern canceled alleging a violation of the contract warranties. If this clause or endorsement is interpreted as, in effect, making Southeastern an excess carrier in all situations where there is a tenant lease agreement for Dome facilities, then Alexander has failed to provide the coverage that it had agreed to procure in its bid proposal. There is a duty involved in that “An insurance broker has a [fiduciary] relationship to the insured as well as the insurer and is liable for its own fault or neglect.” Neustadter v. Bridges, 406 So.2d 738, 741 (La.App. 4th Cir., 1981).
The law and jurisprudence are clear that Alexander owed the State a duty to provide the insurance coverage which it had contracted in the winning bid proposal. However, in this situation the evidence is unmistakable that Alexander did not in fact provide the coverage that it had included in its bid proposals, i.e. policy problems. While it is generally true that:
“once the insurance is secured the agency of the broker or agent employed is not continuing but ceases.” I.C. Realty, Inc. v. Clifton Conduit Company, Division of General Cable Corp., 291 So.2d 422, 423 (La.App. 4th Cir.,1974)., in the case at bar such coverage was never actually ‘secured’ as promised in the bid proposal. Our Supreme Court, in the case of Leon Irwin & Co., Inc. v. Board of Commissioners of New Orleans, [176 La. 13], 145 So.2d 123 [145 So. 123] (La.,1932) stated that
“when plaintiff submitted its proposal, and it was accepted by the board, there arose a contract between them and each was bound to perform what was promised.” Irwin at 125.
The State held up its end of the bargain by paying the agreed upon premium. However, Alexander failed to furnish the coverage. Therefore Alexander has breached its contract with the State and is liable for damages.
The trial court was not clearly wrong in casting A & A for the State’s additional cost of $29,600.00 in securing the desired coverage.
THIRD PARTY DEMAND
A & A sought judgment against SEFIC on its third party demand for any sums for which it was cast on the main demand. The trial court ruled in A & A’s favor on the third party demand, holding that:
It is clear that both Alexander and Organ/Southeastern breached their respective duties owed to the State regarding the insurance coverage. Alexander breached their duty to procure coverage in compliance with the bid specifications and Southeastern breached its duty to provide coverage. It is the ruling of this court that there existed an agreement between Alexander and Southeastern as to the policy to be submitted in the bid proposal to the State. This court feels that the evidence proves that Alexander relied on this agreement and used this figure to factor their bid proposal. It is submitted by the court that the failure of Alexander to fulfill its part of the contract is due to the fault of Southeastern. While it could be argued that Alexander acquiesced in the policy submitted by Southeastern which included the endorse *758 ment # 8, this does not seem to be the case. Alexander sent Southeastern the binder in May of 1982. This binder included nothing regarding endorsement # 8. Southeastern then sent their binder of a different substance to Alexander, in June of 1982. This binder included the endorsement # 8. The evidence shows that this was in derogation of the initial agreement. This and other previously stated events led to Southeastern’s cancellation and of course this litigation.
Alexander seeks indemnity for any and all damages it may be held liable.
“It has long been held in Louisiana that a party not actually at fault, whose liability results from the faults of others, may recover by way of indemnity from such others. The cases have referred to this imposed liability variously as technical, constructive, vicarious and derivative.” Bewley Furniture Co., Inc. v. Maryland Casualty Co., 285 So.2d 216, 219 (La.,1973)”
The court in Bewley [continued] by stating that:
“The rule of indemnity enunciated in these cases is founded upon the general obligation to repair the damage caused by one’s fault. (La. Civil Code Art. 2315) and the moral maxim that no one ought to be able to enrich himself at the expense of another. La. Civil Code Art. 1965.” Bewley at 220
It is the court’s position that the breach of Alexander’s duty to procure insurance for the State was a direct result of the actions or inactions of Southeastern and accordingly, Alexander is entitled to indemnity from Organ and Southeastern.
The trial court was not clearly wrong in finding that it was SEFIC’s fault that A & A was unable to fulfill its obligation to the State. Its award to A & A under the facts as found by it was correct.
For these reasons, the judgment of the trial court is affirmed at SEFIC’s costs.
AFFIRMED.
SAVOIE, J., agrees in part and dissents in part with written reasons.

. Subsection F of the Comprehensive General Liability Coverage section of the bid proposal provides for a 90-day Notice of Cancellation Endorsement.