322 So.2d 299 (1975)
Irving ARMSTEAD, Sr., Individually, and as Administrator of the Estate of his minor children, Cheryl D. Armstead, et al.
v.
The AETNA CASUALTY & SURETY CO.
No. 10388.
Court of Appeal of Louisiana, First Circuit.
September 18, 1975.
Rehearing Denied November 24, 1975.
Writ Refused December 19, 1975.
*300 Patrick W. Pendley, Plaquemine, for appellants.
John I. Moore and Frederick R. Tulley, Baton Rouge, for appellee.
Before LANDRY and BLANCHE, JJ., and BAILES, J. Pro Tem.
JULIAN E. BAILES, Judge Pro Tem.
This is an appeal by the plaintiffs herein, Irving Armstead, Sr., from a summary judgment granted in favor of defendant, Aetna Casualty and Surety Company (Aetna).
On November 29, 1973, the plaintiff's wife and children were involved in an accident while riding in plaintiff's automobile. Armstead, acting in his own behalf and as administrator of the estate of his minor children, subsequently filed suit against Aetna for the recovery of his medical expenses and for the personal injuries sustained by those children, alleging that the automobile driven by petitioner's wife was insured by Aetna at the time of the collision.
The defendant's motion for summary judgment was based upon its contention that on November 2, 1973, some twenty seven days prior to the accident, Armstead's policy had been cancelled because of non-payment of the premium.
The undisputed facts and chronology of events associated with the cancellation are found in the affidavit of Walter H. Travis, president of the Travis-Bergeron Insurance Agency, Inc., from whom Armstead purchased the policy. The appellant has basically adopted those facts as being true. They are that on March 10, 1973, a one-year policy with Aetna was written through the Travis Agency for Armstead covering the automobile in question for a total premium of $236.00. Armstead paid $137.40 down and the balance of $98.60 was financed through Louisiana National Bank of Baton Rouge, Louisiana.
To borrow that balance from the bank, Armstead and Travis entered into a Premium Finance Agreement with the lender, providing that the balance was to be paid in six monthly installments of $17.62 each, the first to be paid on April 15, 1973, and on the 15th day of each succeeding month thereafter. The Premium Finance Agreement also contained this clause.
"Agent and insured further authorized the Louisiana National Bank of Baton Rouge to cancel any and/or all of said policies at any time that the insured is delinquent in meeting his payments hereunder by more than five (5) days and authorize any insurer on receipt of any notice of cancellation of said policies to remit to Louisiana National Bank of Baton Rouge out of any and all return premiums from said insurance policies the balance of the insured's then outstanding *301 indebtedness hereunder to the Louisiana National Bank of Baton Rouge."
Armstead, by his own admission, was late with some of those payments and, when the sixth and final payment which was due on September 15, 1973, was more than five days delinquent, the bank called upon the Travis Agency to pay that installment, which it did. The note was then assigned to the agency by the bank.
The agency mailed to Armstead a notice of cancellation of the policy on October 23, 1973, which would be effective November 2, 1973, unless payment was made by him prior to that time. The plaintiff does not dispute the receipt of that notice or the fact that no payment was made by him thereafter. On November 5, 1973, Armstead cashed a check in the amount of $68.31, which had been forwarded to him by the Travis Agency. This check represented a return of the unearned premium on the policy. Twenty-seven days later, the unfortunate accident giving rise to this litigation occurred.
Based upon these facts, the trial judge determined that the motion for summary judgment should be sustained. The appellant seeks reversal of that judgment on the grounds that Aetna could not validly cancel a policy for which they had been paid in full and further, that under the provisions of LSA-R.S. 22:636.1, subd. A(6), a third party could not validly cancel a policy of insurance. We find that the judgment of the district court is correct, and accordingly, it is affirmed.
The issues before the court for decision are whether an insured may assign the right to cancel his insurance policy to a third party upon certain terms and conditions and whether the exercise of that right by a third party is violative of public policy or the law of this State. We find no Louisiana decision dealing with these questions. Further, the issue appears to be res nova.
LSA-R.S. 22:637 provides in part as follows:
"A. Cancellation by the insured of any policy which by its terms is cancellable at the insured's option or of any binder based on such policy may be effected by written notice thereof to the insurer and surrender of the policy or binder for cancellation prior to or on the effective date of such cancellation. In event the policy or binder has been lost or destroyed and cannot be so surrendered, the insurer may in lieu of such surrender accept and in good faith rely upon the insured's written statement setting forth the fact of such loss or destruction.
"B. Following such cancellation the insurer shall pay to the insured or to the person entitled thereto as shown by the insurer's records, any unearned portion of any premium paid on the policy as computed on the customary short rate or as otherwise specified in the policy. If no premium has been paid on the policy, the insured shall be liable to the insurer for premium for the period during which the policy was in force. * * *."
Clearly, this statute contemplates the cancellation by an insured of his own policy prior to expiration of its term. Whether the insurer is paid in full is immaterial. We conclude that this right may be assigned by the insured to a third party and we perceive of no reason why such an assignment would be against public policy. See: Saskatchewan Gov't Ins. Office v. Padgett, 245 F.2d 48 (5th Cir. 1957). See also 115 A.L.R. 1212, 1213, and authorities cited therein.
In the instant case the insured contractually authorized cancellation by Louisiana National Bank of this policy in the event of non-payment of the premium and, upon being paid by the agency after demand, the bank assigned that right of cancellation to the agent, who was legally and conventionally subrogated thereto. (c. f., Nagem *302 Electric Co. v. Aetna Ins. Co., 195 So. 76, (La.App. 1st Cir. 1940). The insured was properly notified of the impending cancellation and candidly testified on deposition that, at that time, he had no money with which to pay the last installment. He thereafter cashed the unearned premium check.
LSA-R.S. 22:636.1, subd. A(6) and subd. B(1) contain these terms:
"A. As used in this chapter:
(6) `Nonpayment of premium' means failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums on a policy, or any installment of such premium, whether the premium is payable directly to the insurer or its agent or indirectly under any premium finance plan or extension of credit. (Emphasis added)
"B. A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:
(1) Nonpayment of premium; . . ."
Thus, policy cancellations for non-payment of premium "under any premium finance plan or extension of credit" are sanctioned by the laws of this state and are obviously not contrary to public policy. The policy purchased by Armstead was properly cancelled because of the insured's failure to pay the premium according to the terms of the agreement. Therefore, there being no genuine issue of material fact to be resolved and the defendant being entitled to judgment as a matter of law, the motion for summary judgment was properly granted. LSA-C.C.P. Article 966.
For the foregoing reasons, the judgment appealed is affirmed, at appellant's cost.
Affirmed.