SAMUEL, Judge.
Plaintiff instituted this suit for breach of contract against United Services Automobile Association, his automobile liability insurer, for $3,300, plus penalties and attorney’s fees for its alleged failure to pay a claim when the automobile was destroyed by fire. Defendant answered claiming the loss was sustained after plaintiff’s policy was cancelled for non-payment of premium.
Thereafter, by supplemental and amended petition, plaintiff named Mike P. Galjour Insurance Agency and Regal Premium Finance, Inc. as additional defendants, averring the policy had been purchased through the Galjour agency and financed by Regal. These defendants answered in the form of a general denial and filed exceptions of prescription.
Following trial, judgment was rendered in favor of plaintiff and against the insurer and the finance corporation, United Services and Regal, in solido, in the sum of $3,200, together with attorney’s fees of $1,000, plus interest and costs. The demand against Galjour was dismissed as was the plea of prescription. The two defendants cast have appealed suspensively.
The pertinent facts are not in dispute: Plaintiff procured a policy of automobile liability insurance from Mike P. Galjour Insurance Agency. The policy, effective February 20, 1978, was issued by United Services Automobile Association, and financed through Regal Premium Finance Company. Regal paid the insurer and plaintiff obligated himself to make monthly payments to Regal. The finance agreement authorized the creditor, Regal, to cancel the policy in the event plaintiff did not pay the monthly premium installments when due.
Shortly after purchasing the policy, plaintiff decided to add comprehensive and collision coverage thereto. He paid the full premium ($321) for these additional coverages directly to United Services Automobile Association which added these provisions to the policy. Regal had no knowledge of this additional coverage, nor did it have any knowledge of the payment of premiums therefor.
Plaintiff failed to pay his July premium installment to Regal and on July 24, 1978 Regal sent notice of impending cancellation to plaintiff, Galjour and United Services Automobile Association, requesting payment by August 7, 1978 under penalty of cancellation. No further payments were made. Thereafter, on September 7, 1978, Regal requested the insurer to cancel plaintiff’s policy for non-payment of premiums. Upon receipt of this request the insurer cancelled the policy effective August 7, 1978, and confirmed the cancellation to plaintiff, Galjour and Regal. In October, 1978 plaintiff’s automobile was destroyed by fire and he made a claim against the insurer, which was denied, resulting in this suit.
In his reasons for judgment the trial court concluded Regal and United Services Automobile Association had no authority to cancel the policy insofar as comprehensive and collision was concerned because the premium for those coverages had been paid in full.
In this court appellants contend the trial court erred in: (1) ruling the policy was wrongfully cancelled; alternatively, (2) awarding attorney’s fees; and, in the further alternative, (3) failing to maintain the pleas of prescription.
Relative to appellants’ first contention, to reiterate, as originally issued in February, the one policy in suit provided coverage for bodily injury only. In June, 1978, collision and comprehensive coverage were added to the existing policy. Regal was not notified of this addition, and its loan agreement was in no way affected by it.
The contract between Regal and plaintiff contains the following language:
*613 “TERMS AND CONDITIONS OF FINANCING AND ASSIGNMENT
At the request of the assured below named, we have agreed to finance the payment of the premium on the policy below described and have obtained from assured and/or the policy writing agent an agreement which includes an assignment to us of all return premiums upon the policy and an assignment of any claim for loss (should such loss deplete or reduce the unearned premium) to the extent necessary to pay to us in full all sums due us by the assured. The assured agreed that a default In the payment of any sum or an assignment of the policy without our written consent shall constitute a request by the assured for cancellation of the policy.” (Emphasis ours).
Plaintiff knew, or should have known, that failure to pay any portion of the premium would render the entire policy subject to cancellation. In the absence of cancellation, the insurer continued to provide not only comprehensive and collision coverage, but also liability coverage.
We know of no law, and have been cited to none, which would permit a party to pay for only one portion of a policy without cancelling other portions he did not wish to retain, and to make his election after he had sustained a loss. This, in essence, is what plaintiff was attempting to do when he made a claim under the comprehensive portion of the policy, while that portion of the policy referrable to bodily injury remained unpaid.
By his own admission, plaintiff failed to make any payments under the policy after July, 1978, he received the ten day notice prior to cancellation, and he also received the cancellation notice itself thereafter.
In Armstead v. Aetna Casualty & Surety Co., La.App., 322 So.2d 299, the court determined that an insured could properly assign the right to cancel his policy to a third party under certain terms and conditions, and that such assignment was not violative of the public policy of this state. At page 301 of its published opinion the Armstead court stated:
“LSA-R.S. 22:637 provides in part as follows:
‘A. Cancellation by the insured of any policy which by its terms is cancellable at the insured’s option or of any binder based on such policy may be effected by written notice thereof to the insurer and surrender of the policy or binder for cancellation prior to or on the effective date of such cancellation. In event the policy or binder has been lost or destroyed and cannot be so surrendered, the insurer may in lieu of such surrender accept and in good faith rely upon the insured’s written statement setting forth the fact of such loss or destruction.
‘B. Following such cancellation the insurer shall pay to the insured or to the person entitled thereto as shown by the insurer’s records, any unearned portion of any premium paid on the policy as computed on the customary short rate or as otherwise specified in the policy. If no premium has been paid on the policy, the insured shall be liable to the insurer for premium for the period during which the policy was in force. * # * t
Clearly, this statute contemplates the cancellation by an insured of his own policy prior to expiration of its term. Whether the insurer is paid in full is immaterial. We conclude that this right may be assigned by the insured to a third party and we perceive of no reason why such an assignment would be against public policy. See: Saskatchewan Gov’t Ins. Office v. Padgett, 245 F.2d 48 (5th Cir. 1957). See also 115 A.L.R. 1212, 1213, and authorities cited therein.
In the instant case the insured contractually authorized cancellation by Louisiana National Bank of this policy in the event of non-payment of the premium and, upon being paid by the agency after demand, the bank assigned that right of cancellation to the agent, who was legally and conventionally subrogated thereto, (c. f., Nagem Electric Co. v. Aetna Ins. Co., 195 So. 76, (La.App. 1st Cir. 1940).
*614 The insured was properly notified of the impending cancellation and candidly testified on deposition that, at that time, he had no money with which to pay the last installment. He thereafter cashed the unearned premium check.
LSA-R.S. 22:636.1, subd. A(6) and subd. B(l) contain these terms:
‘A. As used in this chapter:
(6) “Nonpayment of premium” means failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums on a policy, or any installment of such premium, whether the premium is payable directly to the insurer or its agent or indirectly under any premium finance pian or extension of credit. (Emphasis added)
‘B. A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:
(1) Nonpayment of premidm; . .. ’
Thus, policy cancellations for non-payment of premium ‘under any premium finance plan or extension of credit’ are sanctioned by the laws of this state and are obviously not contrary to public policy.”
In the instant case the insured contractually authorized cancellation by' Regal of this policy in the event of non-payment of premium. The policy purchased by plaintiff was properly cancelled because of the insured’s failure to pay the premium according to the terms of that agreement.
Because of our determination on the first assignment of error, we find it unnecessary to discuss the other contentions.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment in favor of defendants-appellants, Regal Premium Finance, Inc., and United Services Automobile Association, and against plaintiff, dismissing his suit against them. All costs in both courts are to be paid by plaintiff, Mark A. Barnes.
REVERSED.