518 So.2d 1144 (1987)
Randall C. WALLEN
v.
David W. SIMPSON, State Farm Mutual Automobile Insurance Company, Merit Insurance of Chicago, Illinois.
No. CA-7788.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1987.
Rehearing Denied February 11, 1988.
Writ Denied April 11, 1988.
Brian J. Waid, Bubrig, Scandurro & Waid, Buras, for appellee.
Edward P. Lobman, Metairie, for appellant.
Before SCHOTT, BARRY and BYRNES, JJ.
BARRY, Judge.
In this personal injury lawsuit the issue is the liability of State Farm Insurance as plaintiff's uninsured motorist carrier.
On March 1, 1983 Randall Wallen purchased auto insurance from Brian Bubrig *1145 at Brian Bubrig Insurance Agency, a State Farm agent. On the application under "List all drivers" Wallen listed himself and "Beverly", though they were not married. Wallen testified that the person taking the application listed Beverly as his wife when he said they were going to be married. Beverly's daughter, Nina, was not named on the application. The policy was for six months, Wallen paid part of the premium, and the policy was issued.[1] The balance was paid within the grace period.
During March, 1983 State Farm sent a questionnaire to Wallen. Billy Wilson, Operations Manager for State Farm's Monroe office, stated the questionnaire was normal practice to check for youthful drivers and other information. The completed questionnaire provides in pertinent part:
[QUESTION] Is there any member of your household who is of driving age but is not a licensed driver?
[ANSWER] Yes
[QUESTION] Please give that person's name, date of birth, family relationship to you, and indicate any reason (for example, illness, general health or previous driving record) which precludes him or her from driving.
[ANSWER] Nina L. Halford/10-07-67/step-daughter/none (except age)
* * * * * *
[QUESTION] Names and dates of birth of other drivers in the household. (Please include driver's license numbers and states of issuance.)
[ANSWER] Nina L. Halford/10-07-67/260 2512 LA. (She does not drive any car listed in my name) [Wallen's initials appear at this point.]
Wallen testified that he listed Nina because she lived in his house, and specified she was his stepdaughter because Beverly was concerned that people would know Nina was only 15 years old and living with a man.
After receiving the completed questionnaire State Farm re-rated the premium and requested $443.19 in addition to the $660.69 already paid. Later it issued a notice of cancellation effective June 15, 1983 if the additional premium was not paid. Wallen does not contest the timeliness of the cancellation notice.
However, Wallen did question the additional premium prior to the cancellation date. Bubrig responded that Nina's residency in the household was the basis for the re-rating, but advised that if they established she was living elsewhere then she would be deleted as a rating factor. Bubrig informed State Farm's Monroe office that Wallen thought Nina should not be considered. When Bubrig learned of the re-rating he claims his secretary called and found out Nina had not left the household. His secretary did not testify.
Wallen testified that prior to June 15, 1983 (the cancellation date), Beverly made a call to someone in State Farm's main office who said he would look into the matter. Wallen also testified Bubrig told them to disregard the cancellation notice, to write on the back of the cancellation notice that Nina was not driving the vehicle, and why the insurance should not be cancelled. Bubrig and Wilson testified if *1146 Nina was not living in Wallen's household she should not have been a rating factor. Both alluded that State Farm had an unwritten policy not to consider casual guests in rating decisions.
Trusina Burns, an underwriting specialist and a senior underwriter for State Farm, testified that she received a note on June 20 from Wallen, but did not see it until June 29. The note stated that Nina had moved out of his household in March 1983. She also identified a memo record of a June 8 conversation (prior to receipt of Wallen's note) with Beverly which states:
She said questionnaire was sent to her and her husband completed it and returned it to Monroe. Said her husband should not have shown the daughter on questionnaire. I asked if daughter was licensedshe said yes but she doesn't drive because she is not old enough. I told her as long as daughter was licensed to drive and a member of household she should be rated on policyshe could turn in license to stateshe said no. She said she would not pay additional premium. I told her that was her prerogative. She asked how much premium could she get back? I told her the policy would cancel [for] non-payment if balance not received. She said she wanted cancelled nowI told her we would accept a written request to cancel signed by her or her husband. (emphasis in original).[2]
No such cancellation was ever received.
On June 22, 1983 Wallen was involved in an accident over which coverage is now disputed. Wallen testified he went to Bubrig's office the day after the accident. Bubrig told him State Farm would take care of everything and Wallen was sent to the hospital.
Wallen testified Nina moved in with Clayton Reno within a month to a month and a half after he filled out the questionnaire. Nina testified she married Reno in September, 1983 and had lived with him for six months prior to their marriage. She explained that she moved back and forth between Reno and her mother, but moved in with Reno about three months before their marriage. Until the marriage, Beverly had legal custody of Nina.
Reno testified Nina moved in with him about six months prior to Wallen's accident. He notified his insurance carrier (prior to Wallen's accident) and asked if he needed to make any additions to his policy to cover Nina while she drove his automobile. State Farm also carried his insurance and Bubrig was his agent. During cross-examination he was asked whether Nina lived with him continuously. Reno responded when he worked offshore Nina would stay with her mother who lived next door with Wallen. When he returned she would go back home.
The trial court found the policy was in effect at the time of the accident. Unfortunately, no reasons for judgment were provided. State Farm appeals urging the policy was cancelled prior to the accident based on Wallen's non-payment of premiums.
La.R.S. 22:636.1(B) provides in pertinent part:
B. A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:
1. Nonpayment of premium; or
* * * * * *
When an insurer claims its policy was cancelled it carries the burden and must show facts which constitute positive and unequivocal proof of understanding that the policy was cancelled. I.C. Realty, Inc. v. Clifton Conduit Co., 291 So.2d 422 (La.App. 4th Cir.1974). A trial court's findings on questions of fact are entitled to great weight and will not be disturbed unless clearly wrong. This presumption of correctness applies even when no written findings of fact are made. Gremillion v. Babst Services, Inc., 405 So.2d 675, 680 (La.App. 4th Cir.1981), aff'd 418 So.2d 637 (La.1982).
*1147 The record is replete with testimony that Nina was not residing in Wallen's household. There was corroborated testimony that Wallen made efforts to resolve the premium dispute and State Farm was aware the re-rating was questionable. Further, there was testimony indicating Wallen believed the re-rating was a mistake and the policy would not be cancelled. This is strengthened by the testimony that after the accident Bubrig assured him State Farm would take care of everything.
Under these circumstances we cannot conclude the trial court was clearly wrong in finding coverage by State Farm.
The judgment is affirmed.
AFFIRMED.
SCHOTT, J., dissents.
SCHOTT, Judge, dissenting:
Between the dates of the issuance of the policy and its cancellation in June, 1983, the insured's stepdaughter, Nina, was fifteen years of age. The insured's wife had legal custody of the child, and, in response to a question at trial as to where she resided until she got married in September, 1983, the child stated she was living "back and forth" with her intended husband and her mother.
Under the circumstances and under the plain wording of the policy Nina was covered under the policy. Had she been in an accident and had State Farm denied coverage this court would surely hold that she was covered. Thus, State Farm was entitled to increase its premium when it learned of Nina's status and to cancel the policy when the premium was not paid.
I would reverse the judgment of the trial court.
NOTES
[1] The pertinent policy language is as follows:

Who Is an InsuredWhen we refer to your car, a newly acquired car or a temporary substitute car, insured means:
1. you;
2. your spouse;
3. the relatives of the first person named in the declarations;
4. any other person while using such a car if its use is within the scope of consent of you or your spouse; and
5. any other person or organization liable for the use of such a car by one of the above insureds.
When we refer to a non-owned car, insured means:
1. the first person named in the declarations;
2. his or her spouse
3. their relatives; and
4. any person or organization which does not own or hire the car but is liable for its use by one of the above persons. (Emphasis in original)
For the purposes of the policy, "relative":
[M]eans a person related to you or your spouse by blood, marriage or adoption who lives with you. It includes your unmarried and unemancipated child away at school. (empahsis added)
[2] We have spelled out abbreviations and made insignificant corrections for ease in reading the contents of this informal memo.