837 So.2d 736 (2003)
Alice Seymour HENDERSON, Plaintiff-Appellant,
v.
GEICO GENERAL INSURANCE COMPANY, et al., Defendants-Appellees.
No. 36,696-CA.
Court of Appeal of Louisiana, Second Circuit.
January 29, 2003.
*737 Bruscato, Tramontana & Wolleson by Anthony J. Bruscato, Monroe, for Appellant.
Voorhies & Labbè by Cyd Sheree Page, Monroe, for Appellees.
Before STEWART, GASKINS and PEATROSS, JJ.
PEATROSS, J.
Plaintiff, Alice Henderson, appeals from a judgment denying her recovery of damages she sustained in an automobile accident. For the reasons stated herein, we reverse and render judgment in favor of Ms. Henderson.

FACTS
This case involves La. R.S. 32:866, also known as the "no pay, no play" statute. The issue before us is whether the trial court erred in finding that Ms. Henderson had no automobile liability insurance at the time of her accident. On January 2, 2001, *738 a truck driven by Harry Statham struck the vehicle Ms. Henderson was driving; the crash injured Ms. Henderson and damaged her vehicle. Ms. Henderson sued Mr. Statham and his insurer, GEICO General Insurance Company ("GEICO"). At trial, Defendants stipulated liability; therefore, the only issues for the trial court were Ms. Henderson's coverage and damages.
At the time of the accident, Ms. Henderson was married, but she had physically separated from her husband in February 2000. She remained in the matrimonial home on Oregon Trail in Monroe while her husband lived elsewhere. Ms. Henderson was driving a 1995 Honda Accord at the time of the accident. She testified that the car was titled in her husband's name, but the registration, included as an exhibit in the record, indicated that both she and her husband were listed as owners. The car was financed through Bank One. While the Hendersons lived together, Ms. Henderson took care of the family's business, including securing automobile insurance for the vehicles. In January 1999, Ms. Henderson placed comprehensive insurance on the vehicle through Advanced Insurance Planning ("AIP"), a Monroe insurance broker. The policy was with Continental Insurance Company ("CNA") and named both of the Hendersons and their son as drivers; the address on the policy was the Oregon Trail matrimonial address. The policy renewed in 2000 and was scheduled to expire on January 29, 2001.
Initially, the premium payments were drafted from the couple's joint checking account. On May 18, 2000, however, Mr. Henderson terminated the automatic drafting of the insurance premiums from the bank account, and the insurer began directly billing the Hendersons. According to AIP, no further payments were made on the policy.
On June 30, 2000, AIP received a notice from CNA dated June 19, 2000, stating that the Hendersons' insurance was to be cancelled on July 6, 2000, due to non-payment of premiums. This notice, filed into evidence, was in the nature of a courtesy copy to AIP and contains a notation that the notice was also sent to Michael Henderson and Bank One. Ms. Henderson denied that she received a copy of this notice. Shannon Brown, an AIP representative, testified that, typically, the insurer would send a copy to the insured and copies to the broker and the lienholder. On July 25, 2000, after the policy had purportedly been cancelled, AIP received another document from CNA seeking payment from the Hendersons for an additional $104.25 owed on their policy. The bill states that it is a "closing bill" and that the Hendersons' insurance with CNA was terminated on July 6, 2000. By its language, it appears that the bill was intended for the Hendersons, but there is nothing in the record which indicates it was actually mailed to either Mr. or Ms. Henderson. Ms. Henderson testified that she did not receive the bill.
On June 23, 2000, Ms. Henderson purchased a comprehensive insurance policy on the Honda from U.S. Agencies. Ms. Henderson testified that she secured this insurance when she was unable to learn from AIP whether the Honda still had insurance through CNA, and she and her husband were not communicating. Ms. Brown testified that she sent a letter addressed to Mr. Henderson at the Oregon Trail address in August 2000 informing him that CNA had cancelled the policy effective July 6, 2000; a copy of that letter is included in the record as an exhibit. Mr. Henderson denied receiving this letter.
*739 Subsequently, CNA sent another notice, dated November 28, 2000, to the Hendersons and to AIP. Ms. Henderson testified that she received this notice, which provides, in part:
 NOTICE OF NONRENEWAL OF INSURANCE
Named Insured & Mailing Address Producer: ...
MICHAEL W. HENDERSON ADVANCED INS
 PLANNING, INC.
604 OREGON TRAIL PO BOX 2334
MONROE LA 71202 MONROE LA 72017
Policy No.: US198827222
Type of Policy: AUTO LIABILITY AND PHYSICAL DAMAGE
Date of Expiration: 01/29/2001; 12:01 A.M. Local time at the mailing address of the
 named insured.
We will not renew this policy when it expires. Your insurance will cease on the Expiration
Date shown above.
The reason for nonrenewal is
YOUR AGENT NO LONGER REPRESENTS CNA PERSONAL INSURANCE FOR
PERSONAL INSURANCE PRODUCTS.
This policy provides auto liability coverage. You should contact your agent, or any licensed
agent about your possible eligibility for coverage through the Louisiana Automobile Insurance
Plan.
The copy of this notice in evidence is the copy from AIP's records and is file stamped as received by AIP on December 6, 2000. Obviously, this notice was erroneously generated by CNA as it had already purportedly cancelled the Hendersons' policy for nonpayment on July 6, 2000. Ms. Brown testified that CNA sent similar notices to other CNA policy holders around the same time. AIP then sent Ms. Henderson a letter on December 7, 2000, restating what the CNA notice said and offering to replace her CNA coverage with other insurance.
Ms. Henderson stopped paying the premium on the U.S. Agencies policy in late 2000 and that policy was terminated for nonpayment. According to her testimony, and over the objection of opposing counsel, Ms. Henderson said that her agent told her "that I have two insurance policies. They said it was against the law to have two insurance policy (sic) on a car. That's when I quit paying it." The record contains a November 13, 2000 notice to Ms. Henderson from U.S. Agencies stating that her policy would expire on November 24, 2000, if she did not pay her premium.
The Hendersons' finance agreement with Bank One required the owners to carry comprehensive insurance. Irven Wright, a Bank One branch manager in Monroe, testified that his records did not contain any notice of cancellation from any insurance carrier. He said that Bank One had numerous addresses where these records were sometimes sent and that "there's always a problem" in getting the right documents to the right location for the right file.
Mr. Henderson testified that he did not notify AIP of his change of address after he moved out of the matrimonial residence. He further testified that he did not receive, nor had he seen, any of the described *740 notices or correspondence prior to his deposition in this case.
After hearing all of this evidence, the court took the case under advisement and subsequently awarded damages to Ms. Henderson in the amount of $8,883.66. The court, however, further ordered that La. R.S. 32:866, the "no pay, no play" statute, applies to the case so that Ms. Henderson would not recover her awarded damages as the amount was less than $10,000 as provided in the statute. This appeal ensued.

DISCUSSION
La. R.S. 32:866 provides, in part:
A. (1) There shall be no recovery for the first ten thousand dollars of bodily injury and no recovery for the first ten thousand dollars of property damage based on any cause or right of action arising out of a motor vehicle accident, for such injury or damages occasioned by an owner or operator of a motor vehicle involved in such accident who fails to own or maintain compulsory motor vehicle liability security.
...
B. Each person who is involved in an accident in which the other motor vehicle was not covered by compulsory motor vehicle liability security and who is found to be liable for damages to the owner or operator of the other motor vehicle may assert as an affirmative defense the limitation of recovery provisions of Subsection A of this Section.
Because section B of the statute provides that "no pay, no play" is an affirmative defense, the tortfeasor is charged with the burden of proving that the victim is uninsured. It is well-settled that the party asserting an affirmative defense has the burden of proof thereon. Burt v. Burt, 28,840 (La.App.2d Cir.10/30/96), 682 So.2d 866; Winru Chemical & Sales Co. v. Collier, 73 So.2d 9 (La.App. 2d Cir.1954).
The evidence clearly shows that the Hendersons purchased insurance for their Honda Accord and that the term of this insurance encompassed the date of the accident. Ms. Henderson argues on appeal that the tortfeasor and his insurer, GEICO, did not prove that this insurance was cancelled, either by an affidavit of noninsurance or by CNA records.[1] Defendants contend that the proof offered was sufficient.
In the context of an insurer seeking to prove that a policy has been cancelled, the *741 standard of proof is set out in the insurance statutes.
La. R.S. 22:636.1 provides, in part:
B. (1) A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:
(a) Nonpayment of premium.
...
D. (1) No notice of cancellation of a policy to which Subsection B or C of this Section applies shall be effective unless mailed by certified mail or delivered by the insurer to the named insured at least thirty days prior to the effective date of cancellation; however, when cancellation is for nonpayment of premium at least ten days notice of cancellation accompanied by the reason therefor shall be given. In the event of nonpayment of premiums for a binder, a ten day notice of cancellation shall be required before the cancellation shall be effective. Notice of cancellation for nonpayment of premiums shall not be required to be sent by certified mail. Unless the reason accompanies the notice of cancellation, the notice of cancellation shall state or be accompanied by a statement that upon written request of the named insured, mailed or delivered to the insurer within six months after the effective date of cancellation, the insurer will specify the reason for such cancellation. This Subsection shall not apply to nonrenewal.
...
F. Proof of mailing of notice of cancellation, or of intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy, shall be sufficient proof of notice.
It is well settled that an automobile liability insurer has the burden of proving that the policy has been cancelled prior to the date of the accident giving rise to a claim under the policy, and the insurer must show facts which constitute positive and unambiguous proof of understanding of cancellation of the policy. Johnson v. Williams, 35,986 (La.App.2d Cir.9/18/02), 828 So.2d 90, citing Burge v. Allstate Insurance Co., 97-1087 (La.App. 5th Cir.4/15/98), 710 So.2d 1196; Wallen v. Simpson, 518 So.2d 1144 (La.App. 4th Cir. 1987), writ denied, 523 So.2d 214 (La. 1988); Chapman v. Leger, 405 So.2d 604 (La.App. 3rd Cir.1981); I.C. Realty, Inc. v. Clifton Conduit Co., Division of General Cable Corp., 291 So.2d 422 (La.App. 4th Cir.1974). Courts require strict compliance with the statutory provisions for a valid notice of cancellation of an insurance policy. Johnson v. Williams, supra. We find that the same standard of proof applies in the context of a third party tortfeasor who asserts that the plaintiff was uninsured at the time of the accident which caused the plaintiff's damages.
At the outset, we note that two of the three items of correspondence in this case, i.e., the July 25, 2000 notice from CNA and the August 16, 2000 letter addressed to Mr. Henderson from Ms. Brown stating that the CNA policy had been cancelled on July 6, 2000, cannot be deemed effective notices of cancellation as they were generated after the purported date of cancellation. See La. R.S. 22:636.1(D) requiring that, to be effective, a notice of cancellation must be mailed ten days prior to the date of cancellation. The focus of our discussion, therefore, will be on the notice of cancellation dated June 19, 2000, and received by AIP on June 30, 2000, the only correspondence that was allegedly provided to the Hendersons prior to the date of the accident.
Proof of mailing notice of cancellation to the named insured at the address *742 shown on the policy shall be sufficient proof of notice. Proof of receipt of that notice is not required. Folds v. Protective Cas. Ins. Co., 26,323 (La.App.2d Cir.12/7/94), 647 So.2d 1215, citing Hemperly v. Aetna Cas. & Sur. Co., 516 So.2d 1202 (La.App. 2d Cir.1987), citing Dufrene v. Dixie Auto Ins. Co., 376 So.2d 507 (La. App. 4th Cir.1979), writ denied, 378 So.2d 1390 (La.1980); see also Broadway v. All-Star Insurance Corp., 285 So.2d 536 (La. 1973); Aultman v. Rinicker, 416 So.2d 641 (La.App. 2d Cir.1982).
In the case sub judice, we find no proof from the records of CNA or any other source that affirmatively shows that CNA mailed notice of cancellation to the Hendersons.[2] The only indications in this record that a timely notice of cancellation might have been mailed to Mr. Henderson are: (1) a notation at the bottom of the June 19, 2000 notice of cancellation from CNA for nonpayment of premiums addressed to AIP and produced from AIP's records, which indicates that a copy of the notice was also sent to Mr. Henderson, and (2) Ms. Brown's testimony that, typically, a notice of cancellation for nonpayment, such as the one received by AIP on June 30, 2000, would be sent by the insurer (CNA) to the insured (Mr. Henderson) and the lienholder (Bank One).
In Ledbetter v. Myers, 438 So.2d 700 (La.App. 2d Cir.1983), this court found that the defendant failed to establish a prima facie case of proof of mailing even where the supervisor testified in his affidavit that he "supervised the mailing" of a notice of cancellation. In its brief and oral argument on appeal, the insurer made the critical admission that the supervisor did not actually mail the notice himself and did not know who mailed the notice. Absent personal knowledge of the mailing of the notice on the part of the attesting supervisor, no prima facie case was established. Likewise, in Cole v. Lavine, 595 So.2d 398 (La.App. 3d Cir.1992), the court found that computer generated records of mailing alone, without additional evidence that the notice was actually mailed and not returned to the insurer did not constitute a prima facie case of proper mailing.[3]
In the case sub judice, the evidence falls short of the evidence presented in both Ledbetter and Cole. We find this circumstantial evidence to be insufficient to satisfy the burden of proof of proper mailing for purposes of notice of cancellation under La. R.S. 22:636.1. Accordingly, we further find that Defendants failed to meet their burden of proving the affirmative defense that Ms. Henderson was uninsured under La. R.S. 32:866; and, therefore, we hold that coverage existed under the CNA policy at the time of the accident. The portion of the judgment denying Ms. Henderson recovery under the "no pay, no play" statute is reversed and the amount awarded by the trial court to Ms. Henderson is recoverable.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed insofar as it denies Ms. Henderson's recovery under *743 La. R.S. 32:866. The judgment in the amount of $8,883.66 in favor of Ms. Henderson is recoverable against Defendants, GEICO General Insurance Company, et al. Costs of appeal are taxed against Defendants, GEICO General Insurance Company, et al.
REVERSED AND RENDERED.
NOTES
[1] La. R.S. 32:863.2(C) provides, in part:

C. The secretary shall keep a record of the information received from security providers concerning coverage of vehicles and persons by security required by R.S. 32:861, which information may be stored through automated electronic data processing means. After the department has complete vehicle liability security records, upon written request including the driver's license number for each person, the vehicle identification number for each vehicle, and the payment of a fee of fifteen dollars for each vehicle owned by a person about which inquiry is made, the secretary shall forward to the inquiring party such vehicle and driver liability security information as is contained in the records of the department. If the department's search of its records fails to show the existence of any liability insurance or other security as of the date about which inquiry is made, an official of the department will issue a sworn, notarized affidavit to that effect. Such an affidavit shall be prima facie evidence that on the date in question, the person or vehicle about which inquiry was made did not have in effect a policy of liability insurance or other security as required by law. ... (Emphasis added.)
Although this statute provides a convenient method for an interested party to determine insurance coverage, neither its language nor the compulsory insurance scheme as a whole limits proof of noninsurance to the certificate of the Department of Insurance.
[2] Although Defendants urge that Ms. Henderson stipulated that notices were sent, the admission in the cited portion of the transcript refers to the notices sent to AIP, not to the Hendersons.
[3] In comparison, this court and the fifth circuit have held that an insurer's computer generated records of mailing, with witness verification and authentication, plus certificates of bulk mailing and witness testimony that the insurer's records contained no indication that the notice was returned were collectively sufficient to establish a prima facie case of mailing. Hemperly v. Aetna Cas. & Sur. Co., supra; Burge v. Allstate Insurance Co., supra.