Judgment rendered September 25, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,946-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

LARRY L. TAYLOR                          Plaintiff-Appellant

versus

ELIZABETH ANN STEWART                    Defendant-Appellee
BEDINGFIELD

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 149,136-E

Honorable Michael Nerren, Judge

* * * * *

HARPER LAW FIRM, APLC                    Counsel for Appellant
By: Jerald R. Harper
    Anne E. Wilkes

CECIL P. CAMPBELL, II                    Counsel for Appellee

ELIZABETH ANN STEWART                    In Proper Person
BEDINGFIELD

* * * * *

Before MOORE, PITMAN, and GARRETT, JJ.

**PITMAN, J.**

The trial court filed a judgment in favor of Plaintiff Larry L. Taylor and against Defendant Elizabeth Ann Stewart Bedingfield in the amount of $30,000, less an offset of $11,990.49. Taylor appeals the amount awarded. For the following reasons, we affirm the judgment of the trial court in part and reverse in part.

## FACTS

On February 1, 2016, Taylor filed a petition for recovery of money he lent to Mrs. Bedingfield. He stated that he was good friends with her and her husband Jimmy Bedingfield. In January 2010, Mr. Bedingfield indicated that he was experiencing financial difficulty. Taylor wrote a check for $30,000, payable to "Jimmy Bedingfield," which was deposited into an account for the Bedingfields' business, The Home Store. He stated that several days prior to Mr. Bedingfield's death in February 2011, Mrs. Bedingfield thanked him for the loan and assured him that there was adequate life insurance to pay the debt. He alleged that Mrs. Bedingfield repeatedly assured him of her intention to pay him back and that she acknowledged the debt to third parties. He stated that in January 2016, he asked Mrs. Bedingfield to execute a promissory note, and she responded that she had no knowledge of any indebtedness and refused to pay him.

On April 1, 2016, Mrs. Bedingfield filed an answer denying Taylor's allegations and raising affirmative defenses.[1] She stated that the obligation

---

[1] Mrs. Bedingfield also filed an exception of prescription. She stated that the loan was allegedly tendered on January 26, 2010; that an action on money lent is subject to a liberative prescription of three years; and that, therefore, Taylor's action had prescribed on its face. Taylor argued that Mrs. Bedingfield acknowledged the debt on at least three different occasions within the three-year prescriptive period. The trial court referred the exception to the merits of the case.

had been extinguished; that she was entitled to offset for any and all sums owed unto her, Mr. Bedingfield or The Home Store; and that the loan was a separate obligation of Mr. Bedingfield. Taylor responded that her affirmative defense of offset had some merit to the extent that he received materials and labor from The Home Store free of charge.

On October 19, 2016, Taylor filed a motion to compel, requesting that the trial court compel Mrs. Bedingfield to provide bank records, tax returns, financial statements and other similar documents relevant to the facts of the case. After a hearing on October 31, 2016, the trial court filed a judgment granting the motion to compel on November 29, 2016.

The trial began on July 7, 2017. Taylor called Mrs. Bedingfield as a witness. She testified that she married Mr. Bedingfield in 1972, and he died on February 8, 2011. She owns The Home Store in Bossier City. While he was alive, Mr. Bedingfield maintained the books for The Home Store and employed a bookkeeper. She testified that she did not know anything about the financial situation of The Home Store in 2009 or about the January 2010 loan. She stated that she had not seen the $30,000 check until Taylor included it in his lawsuit. An exhibit showed that the $30,000 check was deposited into The Home Store's account with Citizens National Bank on January 26, 2010. She testified that Taylor was lying about her acknowledgement of the loan. She stated that after litigation began, she discovered that The Home Store supplied materials and labor to Taylor, including when he built a new house, but had not sent him any invoices since Mr. Bedingfield's death.

Taylor's wife, Glenda Taylor, testified that after Mr. Bedingfield's death, she and Taylor went to The Home Store at least three times to pick

2

out carpet and tile for the house they were building. She mainly worked with Mrs. Bedingfield's son, but stated that Mrs. Bedingfield helped on occasion. She testified that she did not receive any invoices for the tile and carpet she chose at The Home Store. She stated that Taylor told her about a loan he made to Mr. Bedingfield on the day he wrote the check. He also told her that, after Mr. Bedingfield's death, he communicated with Mrs. Bedingfield about the loan on three or four occasions and that she acknowledged the loan.

The trial continued on July 28, 2017. Taylor testified that on January 26, 2010, he had lunch with Mr. Bedingfield and wrote him a check for $30,000. He stated that he expected to be paid back and that he wrote "Loan JB" on the memo line. He further stated that Mrs. Bedingfield knew about the loan, that they talked about it on numerous occasions and that she acknowledged that she wanted to pay back the loan. He recalled that the first time he spoke with Mrs. Bedingfield about the loan was several days before Mr. Bedingfield's death in February 2011. He alleged that Mrs. Bedingfield told him how grateful they were for the loan, that it saved their house and business and that she was going to pay him back with life insurance proceeds. He testified that after Mr. Bedingfield's death, he went to The Home Store numerous times to check on Mrs. Bedingfield and that she would assure him that that he would be repaid from the succession and life insurance. He stated that in 2013 and 2014, he bought materials, including tile and carpet, and labor from The Home Store for the house he lived in and for a house he was building. He never received an invoice and noted that Mrs. Bedingfield said it would all wash out in the end because she owed him money. He stated that prior to Mr. Bedingfield's death, he always

received invoices for materials and labor he purchased from The Home Store for his building business. He also stated that in 2016, he approached Mrs. Bedingfield about signing a promissory note, and she responded that she knew nothing about the loan and did not owe him anything. He then rested his case.

Mrs. Bedingfield testified that she did not have a conversation with Taylor several days before Mr. Bedingfield's death. She stated that she did not have any conversations with Taylor about the loan until he came to The Home Store in January 2016. She told him that she did not know about any money and asked him to leave the store. She explained that if her son worked with the Taylors on choosing materials for the house they were building, he would have been responsible for the invoices. She stated that after litigation began, she discovered a folder her son kept regarding materials and labor for the Taylors. Counsel for Taylor objected to testimony regarding this folder and its contents because it was not produced during discovery. Counsel for Mrs. Bedingfield responded that they did not intend to offer evidence regarding the folder. Mrs. Bedingfield then rested her defense. The trial court reset the matter for closing arguments.

The parties returned to court on November 9, 2017. The court reset closing arguments to January 4, 2018. It reopened the case for the limited purpose of admitting evidence regarding offsets. It stated its intent to appoint an independent agent to estimate the cost for the materials and labor performed for Taylor by The Home Store. Counsel for Taylor objected to the reopening of the case and argued that Mrs. Bedingfield failed to prove at trial the amount of offset to which she was entitled.

4

On August 29, 2018, Taylor filed a motion for entry of judgment. He noted that the independent agent calculated the offset to be $11,990.49. He objected to any offset and to the estimate because there was no proper evidentiary foundation, and the evidence was not timely and properly adduced prior to the submission of the case.

On October 22, 2018, counsel for both parties presented arguments regarding the presentation of evidence and the offset. The trial court took the case under advisement.

On December 6, 2018, the trial court filed an opinion and found that it could consider the independent agent's calculation of the offset when no evidence of the offset amount was offered at trial. It explained that because Taylor's indebtedness to The Home Store was not in dispute, it could take judicial notice of that fact without the formal presentation of evidence. It determined that Mrs. Bedingfield was liable for the $30,000 loan, minus $11,990.49 for services rendered by The Home Store. It explained that Mr. Bedingfield incurred the debt during his marriage to Mrs. Bedingfield, so she was also indebted to Taylor.

On December 20, 2018, the trial court filed a judgment in favor of Taylor and against Mrs. Bedingfield in the sum of $30,000, less the sum of $11,990.49 as a credit, together with legal interest on the remaining balance from the date of the filing of the original petition.

Taylor appeals.

## DISCUSSION

Taylor argues that the trial court erred when it awarded Mrs. Bedingfield an offset after she failed to meet her burden of proof for the affirmative defense. He contends that the trial court erred when it

reopened and/or left open the trial record for the admission of new evidence and then considered otherwise inadmissible evidence of offset. He argues that any evidence of offset data was outside of the record, was not subject to direct or cross-examination and did not adhere to the rules of evidence. Therefore, Taylor contends that offset should be denied in its entirety.

Offset, also known by the codal term "compensation," takes place when two persons owe to each other sums of money, and these sums are liquidated and presently due. La. C.C. art. 1893. An assertion of offset or compensation equates to the affirmative defense of extinguishment of the obligation. La. C.C.P. art. 1005; *Arkla, Inc. v. Maddox & May Bros. Casing Serv.*, 624 So. 2d 34 (La. App. 2 Cir. 1993). It is well settled that the party pleading the affirmative defense bears the burden of proving it by a preponderance of the evidence. *See Henderson v. Geico Gen. Ins. Co.*, 36,696 (La. App. 2 Cir. 1/29/03), 837 So. 2d 736; *Arkla, Inc. v. Maddox & May Bros. Casing Serv.*, *supra*.

La. C.C.P. art. 1631(A) provides that the court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done. La. C.C.P. art. 1632 sets forth the normal order of trial as follows:

> (1) The opening statements by the plaintiff and the defendant, in that order;
> (2) The presentation of the evidence of the plaintiff and of the defendant, in that order;
> (3) The presentation of the evidence of the plaintiff in rebuttal; and
> (4) The argument of the plaintiff, of the defendant, and of the plaintiff in rebuttal, in that order.

6

La. C.C.P. art. 1632 provides that this order may be varied by the court when circumstances so justify.

In *Thomas v. Thomas*, 51,894 (La. App. 2 Cir. 2/28/18), 246 So. 3d 736, this court discussed the trial court's discretion to reopen a case for the production of additional evidence and stated:

> These articles have been construed to provide that a trial judge has a right, if the ends of justice so require, to reopen a case to permit the further production of evidence by either party. The decision to hold open or reopen a case for the production of additional evidence is within the sound discretion of the trial court and will not be disturbed on appeal unless manifestly erroneous. In order to prevent a miscarriage of justice, a trial court should not hesitate to reopen a case for the taking of additional evidence when properly requested, and an appellate court should not hesitate to set aside the ruling of a trial court on such matters in a case of manifest abuse of discretion. *See Antley v. Brantly*, 28,049 (La. App. 2 Cir. 2/28/96), 669 So. 2d 685; *Harris v. West Carroll Par. Sch. Bd.*, 605 So. 2d 610 (La. App. 2 Cir. 1992), *writ denied*, 609 So. 2d 255 (La. 1992); *American Bank & Tr. Co. of Coushatta v. McDowell*, 545 So. 2d 1211 (La. App. 2 Cir. 1989); *Yeutter v. Lewis*, 334 So. 2d 728 (La. App. 3 Cir. 1976).

In this case, Mrs. Bedingfield did not meet her burden of proof for the amount of offset to which she was entitled. Although she asserted the affirmative defense of offset, she failed to produce any documents in support of this defense during discovery, even after the trial court granted Taylor's motion to compel. At trial, she testified that she had no knowledge of The Home Store's work with the Taylors and introduced no evidence of any materials and labor that were supplied free of cost or of the value of any materials and labor provided to the Taylors. Notably, Mrs. Bedingfield's failure to provide documentation of offset may have been a strategic attempt to support her argument of prescription.

Further, the trial court abused its discretion in reopening the record and accepting the figure of $11,990.49. Over Taylor's counsel's consistent

objections, it allowed Mrs. Bedingfield to obtain estimates from two flooring companies for the value of materials and labor provided to the Taylors by The Home Store. These estimates were not introduced into evidence, no testimony or cross-examination was permitted and the trial court used these estimates to determine the amount of offset. Had these estimates been admitted as evidence during trial, Taylor would have had the opportunity to rebut the evidence and object to the admission of the estimates absent expert qualification, authentication or supporting testimony. Further, considering that Mrs. Bedingfield made no effort during discovery or at trial to present evidence of offset, the ends of justice did not require the trial court to reopen this case. *See Thomas v. Thomas*, *supra*. The estimates were clearly inadmissible.

Accordingly, these assignments of error have merit.

## CONCLUSION

For the foregoing reasons, we affirm the portion of the trial court's judgment awarding $30,000, with interest at the legal rate from the date of judicial demand, to Plaintiff Larry L. Taylor. We reverse the portion of the judgment awarding an offset in favor of Defendant Elizabeth Ann Stewart Bedingfield. All costs are assessed to Defendant Elizabeth Ann Stewart Bedingfield.

**AFFIRMED IN PART AND REVERSED IN PART.**